STATE of Wisconsin EX REL. Micheal LOCKLEAR, Petitioner-Appellant,

v.

David H. SCHWARZ, Administrator, Division of Hearings and Appeals, Respondent-Respondent.

Court of Appeals

*No. 99–3211. Submitted on briefs January 12, 2001.—Decided February 21, 2001.*

## 2001 WI App 74

(Also reported in 629 N.W.2d 30.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Micheal Locklear,* pro se.

On behalf of the respondent-respondent, the cause was submitted on the brief of *William C. Wolford,* assistant attorney general, and *James E. Doyle,* attorney general.

Before Brown, P.J., Anderson and Snyder, JJ.

¶ 1.   SNYDER, J.   Micheal Locklear, a prisoner in the Wisconsin correctional system, appeals pro se from an order of the circuit court dismissing his petition for certiorari review of his probation revocation. Locklear argues that the circuit court erred when it held that his petition was untimely filed. We agree with Locklear that his petition was timely filed; we therefore reverse the order of the circuit court and remand this matter to the circuit court for proceedings consistent with this decision.

## FACTS

¶ 2.   On March 11, 1992, Locklear was sentenced to five years in prison, to be served concurrently with another sentence. That same day, Locklear was also sentenced to seven years in prison; however, this sentence was imposed and stayed and Locklear was placed on probation for five years, which was to be served consecutive to any other sentence. On April 28, 1992, Locklear was sentenced to four years in prison. This sentence was also imposed and stayed and Locklear was placed on probation for five years, to be served concurrent with any other terms of probation.

¶ 3.   On February 24, 1998, Locklear allegedly violated the terms of his probation, and he was placed in custody pending revocation proceedings. On August 20, 1998, Locklear's final probation revocation hearing was held in Milwaukee; on September 16, 1998, his probation was revoked by an administrative law judge (ALJ).

¶ 4.   Locklear appealed this decision to David H. Schwarz, the Administrator of the Division of Hearings and Appeals, and on October 6, 1998, Schwarz affirmed the ALJ's decision and entered an order revoking Locklear's probation. Schwarz's decision was mailed to

Columbia Correctional Institution (CCI) in Portage, Wisconsin, where Locklear had been incarcerated at the time of the final revocation hearing. However, on October 20, 1998, Locklear was transferred from CCI to Dodge Correctional Institution (DCI) in Waupun, Wisconsin. It does not appear that Locklear received a copy of Schwarz's decision until October 28, 1998.

¶ 5. On October 13, 1998, Locklear wrote to the Department of Justice (DOJ) asking for a three-strikes certification pursuant to WIS. STAT. §§ 801.02(7)(d) and 802.05(3)(c) (1999–2000).[1] On October 22, 1998, Locklear wrote to the circuit court asking for an extension of time to file his petition. On November 10, 1998, the circuit court clerk responded to Locklear, asking about the status of his potential submissions, and informing him that the circuit court had granted his request for a time extension. On November 22, 1998, Locklear submitted a second request for a three-strikes certification to the DOJ; in addition, he sent a request to the DCI registrar for a certified copy of his prison trust account statement. On November 25, 1998, the Department of Corrections (DOC) refused to provide Locklear a legal loan for photocopying and mailing services.

¶ 6. On December 13, 1998, Locklear mailed all of his legal documents to the Waukesha county clerk of court's office. Locklear's certified trust account statement was sent by separate mail from the DCI registrar and was initially received by the criminal/traffic division of the clerk of court's office on November 30, 1998, but must have been forwarded to the civil division and was received there on December 17, 1998. Locklear's documents were received by the clerk of court's office

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version.

the next day, December 18, 1998, and included an original and two copies of a petition for certiorari review of his probation revocation, a proposed writ, a proposed order waiving costs and fees, an affidavit of indigency, and a request to proceed without paying the filing fee. Locklear's authorization to withhold the funds from his prison trust account and his indigency affidavit were also received by the clerk of court's office that same day. On December 18, 1998, the circuit court denied Locklear's petition because he did not provide documentary proof of exhaustion of administrative remedies. The record is unclear whether Locklear's materials were returned to him.

¶ 7.  On December 30, 1998, Locklear submitted a copy of Schwarz's decision as proof of exhaustion of administrative remedies.

¶ 8.  On January 4, 1999, Locklear sent a letter to the circuit court asking the court to reconsider its denial of his petition. That same day, another Locklear indigency affidavit was received by the circuit court. On January 13, 1999, the circuit court sent Locklear a letter indicating that it had received his papers; the court informed Locklear that he was still missing the DOJ certification and the six-month certified trust account statement.

¶ 9.  On January 29, 1999, Locklear's DOJ certification and certified trust account statement were received by the court. Despite their receipt, that same day, January 29, 1999, the circuit court denied Locklear's petition for failure to include the DOJ certification and a certified trust account statement. Locklear's papers were returned to him on or about February 10, 1999.

¶ 10.  On or about February 11, 1999, Locklear resubmitted his papers; they were again returned to

him on or about February 16, 1999. On March 10, 1999, Locklear again submitted his papers. Locklear's certified trust account statement was received by the clerk of court's office on March 17, 1999. However, on March 17, 1999, Locklear's petition was denied for lack of DOJ certification and documentary proof of exhaustion of administrative remedies.

¶ 11.   On April 19, 1999, Locklear's indigency affidavit was again received, along with his certified trust account statement, his DOJ certification and his authorization to withhold funds from his prison account. Schwarz's decision was also received that same day. Locklear's petition was then accepted for filing.

¶ 12.   On July 9, 1999, Schwarz filed a motion to quash the petition for writ of certiorari for being untimely filed. A hearing was held on September 30, 1999, and on November 11, 1999, the circuit court granted Schwarz's motion and Locklear's petition was dismissed as untimely. Locklear appeals from the order dismissing his petition. Further facts will be discussed as necessary to this decision.

## DISCUSSION

¶ 13.   Locklear argues that the circuit court misused its discretion when it found that his petition for writ of certiorari review was untimely filed. Schwarz argues that the circuit court properly quashed the writ because the petition was not filed in a timely manner. We agree with Locklear.

██

¶ 14.   A prisoner petitioning for a writ of certiorari can request waiver of prepayment of costs and fees on the grounds of indigency under WIS. STAT. § 814.29(1m). The circuit court must determine

whether the prisoner has insufficient funds to pay the fees up front and whether all the proper papers have been submitted. *State ex rel. Steldt v. McCaughtry,* 2000 WI App 176, ¶ 8, 238 Wis. 2d 393, 617 N.W.2d 201. If all conditions are met, the circuit court must issue an order allowing the prisoner to commence the action without prepayment of the fees. *Id.*

¶ 15. WISCONSIN STAT. § 893.735 addresses actions by prisoners contesting a governmental decision and states, in relevant part:

> **(2)** An action seeking a remedy available by certiorari made on behalf of a prisoner is barred unless commenced within 45 days after the cause of action accrues. The 45-day period shall begin on the date of the decision or disposition, except that the court may extend the period by as many days as the prisoner proves have elapsed between the decision or disposition and the prisoner's actual notice of the decision or disposition. Subject to no contact requirements of a court or the department of corrections, a prisoner in administrative confinement, program segregation or adjustment segregation may communicate by 1st class mail, in accordance with department of corrections' rules or with written policies of the custodian of the prisoner, with a 3rd party outside the institution regarding the action or special proceeding.
>
> **(3)** In this section, an action seeking a remedy available by certiorari is commenced at the time that the prisoner files a petition seeking a writ of certiorari with a court.

Here, the issue we must address is whether Locklear filed his petition for writ of certiorari within the forty-five day deadline of § 893.735.

¶ 16. To determine the point at which a petition for writ of certiorari is filed for the purpose of satisfying the forty-five day deadline, we must interpret and apply WIS. STAT. § 893.735. The interpretation and application of statutes present questions of law that we review de novo. *Steldt*, 2000 WI App 176 at ¶ 11.

¶ 17. On October 6, 1998, Schwarz issued the decision affirming Locklear's probation revocation and mailed a copy to CCI. However, Locklear was transferred from CCI to DCI on October 20, 1998, and he maintains that he did not receive the decision until October 28, 1998.

¶ 18. There is evidence that Schwarz's decision was received at DCI on October 15, 1998. However, there is also support for Locklear's argument that he did not receive the decision until October 28, 1998; on the back of the document indicating DCI receipt on October 15, 1998, there is also a date stamp of October 27, 1998. It is unknown where this date stamp came from, and as the State conceded during the hearing on the motion to quash, it is unlikely that Locklear himself had a date stamp to make this mark.

¶ 19. The circuit court made no precise finding as to when Locklear received notice of Schwarz's decision, but found that Locklear had received notice "by at least October 28th of 1998." Because WIS. STAT. § 893.735 allows the court to "extend the period by as many days as the prisoner proves have elapsed between the decision or disposition and the prisoner's actual notice of the decision or disposition" and because the circuit court found that Locklear had received notice no later than October 28, 1998, we shall utilize October 28, 1998 as the appropriate starting point for the forty-five day deadline.

¶ 20.  WISCONSIN STAT. § 990.001(4) addresses construction of laws and provides rules for how time is computed. Subsection (a) states that "[t]he time within which an act is to be done or proceeding had or taken shall be computed by excluding the first day and including the last . . . ." We therefore exclude October 28, 1998, in the computation of the forty-five day deadline, and October 29, 1998 is day one.

¶ 21.  With October 29, 1998 as day one, December 12, 1998 should be day forty-five. Locklear's petition and accompanying materials for fee waiver were received by the clerk of court's office on December 18, 1998.

¶ 22.  In order to obtain waiver of prepayment of costs and fees, an indigent prisoner must submit an original and one copy of the following papers:

(1)    The Prisoner's Petition/Affidavit of Indigency; WIS. STAT. § 814.29(1m)(a)1;

(2)    A certification from the Department of Justice regarding the number of litigation dismissals the prisoner has accumulated; WIS. STAT. §§ 801.02(7)(d) and 802.05(3)(c);

(3)    A certified prison/jail trust account statement for the past six months; § 814.29(1m)(b)2;

(4)    An authorization allowing the custodial institution to forward payments from the prisoner's trust account to the clerk of court's office; § 814.29(1m)(c)2; and

(5)    All documentary evidence of exhaustion of administrative remedies; § 801.02(7)(c). This documentary evidence of exhaustion of administrative remedies is considered part

> of the initial pleading and must be attached
> to all copies of the petition. *Id*.

The absence of any one of these requirements can lead to the court's rejection of the petition.

¶ 23. Locklear's December 18, 1998 materials included an original and two copies of a petition for certiorari, a proposed writ of certiorari, a proposed order waiving costs and fees, an affidavit of indigency, and a request to proceed without paying the filing fee. Locklear's certified trust account statement, dated April 24, 1998 through November 24, 1998, was received on December 17, 1998, and his authorization, pursuant to WIS. STAT. § 814.29(1m)(c)2, was received on December 18, 1998. Missing from Locklear's submissions were the required DOJ certification and all documentary proof of exhaustion of administrative remedies.

¶ 24. In a letter to the circuit court dated December 28, 1998, Locklear asserted that he had submitted two separate requests to the DOJ for a three-strikes certification, the first on October 13, 1998, and the second on November 22, 1998. Locklear apparently received no response to either of those requests prior to the expiration of the forty-five day deadline. In fact, it appears that the DOJ did not respond to Locklear's request until at least January 12, 1999, almost three months past his October 13, 1998 request, almost two months past his November 22, 1998 request, and well past the forty-five day deadline.

██

¶ 25. In *State ex rel. Shimkus v. Sondalle*, 2000 WI App 238, 239 Wis. 2d 327, 620 N.W.2d 409, we concluded that when a prison inmate places a certiorari petition in the institution's mailbox for forwarding to the circuit court, the forty-five day time limit in WIS.

STAT. § 893.735(2) is tolled. *Shimkus*, 2000 WI App 238 at ¶ 14. Citing to the United States Supreme Court in *Houston v. Lack*, 487 U.S. 266 (1988), we reasoned that

> [p]ro se prisoners necessarily lose all control over (and all contact with) their documents the moment they deliver them to the prison authorities. . . . Reliance must instead be placed wholly on the good faith of prison officials and employees to see to the timely forwarding of the documents to the designated office. If this trust is violated, whether willfully or through neglect or simple inadvertence, the prisoner loses by default.

*Shimkus*, 2000 WI App 238 at ¶ 13. We therefore effectively tolled the statutory forty-five day time limit from the time the appropriate documents are deposited in the prison mail receptacle and their receipt by the clerk of court. *Id.* at ¶ 9.

¶ 26.   Here again, when obtaining a DOJ certification, a prisoner must rely wholly on the good faith of government officials in order to acquire documentation necessary to obtain waiver of prepayment of costs and fees and initiate litigation. As with the mailing of a prisoner's papers, it would be inequitable to penalize Locklear for the DOJ's delay in providing him with this required documentation, particularly as here where the conditional liberty of a probationer is at stake. "[T]he pro se prisoner has no choice but to entrust [his papers] . . . to prison authorities whom he cannot control or supervise and who may have every incentive to delay." *Steldt*, 2000 WI App 176 at ¶ 14 (citation omitted). Equity requires that we toll the statute of limitations either from the date of Locklear's first or

second request until the date he received the DOJ certification.

¶ 27.   Locklear claims that he first requested a DOJ certification on October 13, 1998; this request was made prior to the commencement of the forty-five day time period on October 28, 1998. On November 22, 1998, Locklear submitted a second request for a DOJ certification. November 22, 1998 was day twenty-five.

¶ 28.   Locklear could not proceed with his petition without this DOJ certification, the receipt of which lay totally in the hands of government officials; we therefore toll the running of the statute of limitations from day twenty-five until Locklear's receipt of this certification.

¶ 29.   There is no evidence in the record as to when Locklear received the DOJ certification. The earliest DOJ certification is dated January 12, 1999, and was submitted to the court on January 29, 1999. Therefore, Locklear must have received this certification sometime between January 12 and January 29, 1999. Giving the DOJ the benefit of the doubt, we shall utilize January 13, 1999, the day after the certification was issued, as the date of Locklear's receipt. January 13, 1999 then becomes the new day twenty-five, and February 2, 1999 becomes the new day forty-five.

¶ 30.   Locklear's papers were adjudged complete and accepted for filing on April 19, 1999; his submissions included an indigency affidavit, certified trust account statement, DOJ certification, his authorization, and Schwarz's decision.[2] However, all these same

---

[2] As noted above, in order to obtain waiver of prepayment of costs and fees, an indigent prisoner must submit, among other things, *all* documentary evidence of exhaustion of administrative remedies, which must be attached to all copies of the initial pleading. WIS. STAT. § 801.02(7)(c). In Locklear's case, all docu-

papers were before the circuit court on January 29, 1999.

¶ 31.  On January 13, 1999, the circuit court sent Locklear a letter indicating that all of his papers were currently before the court except for the DOJ certification and the certified trust account statement. On January 29, 1999, these missing documents were received by the clerk of court's office. If Locklear's papers were complete except for the DOJ certification and certified prison trust account statement on January 13, 1999, and on January 29, 1999, these documents were provided to the court, Locklear's papers would then be complete and ready for acceptance on January 29, 1999.[3]

¶ 32.  Because the statute of limitations must be tolled while the prisoner waits for the DOJ to provide him or her with the required documentation, and Locklear's papers were, in fact, complete on January 29, 1999, before the expiration of the forty-five day period on February 2, 1999, Locklear's petition was, in

mentary evidence of exhaustion of administrative remedies would have included a copy of the ALJ decision revoking his probation, Locklear's appeal of the ALJ decision, and Schwarz's final decision. However, there is no evidence in the record that Locklear's petition included copies of the ALJ decision revoking his probation or his appeal of the ALJ decision. Nevertheless, the circuit court accepted Locklear's materials for filing. We are bound by the record as it comes to us. *Fiumefreddo v. McLean*, 174 Wis. 2d 10, 26, 496 N.W.2d 226 (Ct. App. 1993). When an appellate record is incomplete, we must assume that the missing material supports the circuit court's ruling. *Id.* at 27.

[3] That same day, the circuit court rejected Locklear's papers because of the supposedly missing DOJ certification and certified prison trust account statement. No explanation is provided for this inconsistency.

fact, filed in a timely manner. We must therefore reverse the order of the circuit court.

¶ 33. We also must note that there appeared to be some delay in providing Locklear his personal and legal property after his transfer and with postage and copying services. Locklear was transferred from CCI to DCI on October 20, 1998. The record indicates that he did not receive his personal property until ten days later, October 30, 1998.

¶ 34. Furthermore, on October 20, 1998, and October 22, 1998, Locklear made two requests for photocopying services. There is no evidence of a response to either of these requests. On or about November 19, 1998, Locklear made another request for photocopies. This request was denied, with the terse explanation, "You are not indigent." Locklear then submitted a money disbursement request for photocopies on November 22, 1998. However, this disbursement request was denied because Locklear had "insufficient funds."

¶ 35. On November 11, 1998, Locklear filed an interview/information request form, asking why money his wife had recently deposited in his prison account was not reflected in his prison trust account statement. The response indicated "75% of all incoming funds is being deducted for a legal loan issued to you by CCI info. #05211998."

¶ 36. On November 23, 1998, Locklear wrote a letter to Cheri Rose in the DCI records office, asking how he could have insufficient funds to pay for the photocopying charges, yet still not be considered indigent. Rose's response was:

> The bottom line is that you do not have enough money for the copy work. The papers you sent along

to justify the copies did not ask for 7 copies . . . some of the papers looked like they were typed by you. You will have to type up as many copies as you need.

Attached is the complete copy work procedure. You will not get the copies without following the directions or if you do not have the money.

You might want to send out the paper work to friends or family and have them copy it.

¶ 37.  On November 23, 1998, Locklear again wrote a letter, asking for photocopies and the proper way in which to request photocopies. The undated response contradicts Rose's response, stating, "You are not indigent. You have $4.64 in your regular account. On 11/24/98 money, $.60, was deducted from your account for copies. You have received money from Betty Locklear. You will need to contact Mr. Hart-Assoc. Warden-Treatment if you need copy work done." On November 23, 1998, Locklear submitted another request for photocopies. There is no evidence of a response. There is a memo from James Hart, undated, which states: "Re: legal loan. You should submit a signed disbursement request, specifying the items required to my office."

¶ 38.  On November 25, 1998, Locklear wrote to the circuit court, asking the court to issue an order commanding the DOC to provide him with the requested services. On December 10, 1998, Locklear filed an inmate complaint about his inability to obtain a legal loan and the photocopies that he needed. His complaint was denied for the following reasons:

The inmate claims that staff would not make photocopies of legal documents for him because he couldn't provide them with proof of a court deadline. Cheri Rose, when contacted, indicated that the

inmate did not have any proof of a court deadline. Investigation reveals that Cheri Rose acted in accordance with established procedure. The documents the inmate wanted copied could very well be in handwritten form as the courts do accept handwritten materials. Therefore, I recommend that this complaint be dismissed.

¶ 39. Locklear's first request was denied for insufficient funds, but the request for a legal loan was denied because he had too much money. Locklear's wife provided him money, which was apparently confiscated to pay off a previous legal loan. Locklear's requests were also denied because he allegedly did not comply with established procedure and because he did not provide proof of an established court deadline. Rose's initial denial conflicts with the reasons she provided to the inmate complaint investigator. While Locklear and all prisoners seeking photocopy services are counseled to comply with established prison procedures for obtaining these services, we strongly advise the DOC to promptly address such requests, complying with all constitutional requirements and the requirements of WIS. ADMIN. CODE §§ DOC 309.155 and DOC 309.51 to avoid any potential accusations of denial of access to the courts.

¶ 40. Furthermore, we must comment that the state of the record in this matter is inexcusably disorganized. Documents did not appear to be in any semblance of order, and some documents had two or three different date stamps on them, rendering it difficult to determine when the papers were received. In addition, it appears that Locklear's papers were received and rejected numerous times and for various reasons. However, it is not always clear when or even if

Locklear's papers were returned to him after each rejection or which rejection corresponded to which submission. Because of the shortened deadline for prisoners filing certiorari actions, it is extremely important that both clerk of courts and judicial offices keep thorough and meticulous records when dealing with pro se prisoner submissions. We strongly suggest that each county develop and maintain a system for processing pro se prisoner civil filings, not only to aid in their processing of the submissions, but also, if later necessary, to facilitate appellate review.[4]

## CONCLUSION

¶ 41. Because the statute of limitations is tolled while a prisoner waits for the DOJ to provide him or her with the required WIS. STAT. §§ 801.02(7)(d) and 802.05(3)(c) certification, Locklear's petition was timely filed. We therefore reverse the order of the circuit court and remand this matter for proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded.

---

[4] We note that some counties (Dane county, for example) have in place a system which includes forms and filing requirement checklists, designed to evaluate and process pro se prisoner civil litigation.