STATE of Wisconsin EX REL. Eugene NICHOLS, Petitioner,

v.

Jon LITSCHER, Secretary, Wisconsin Department of Corrections and Rick Hudson, Warden, North Fork Correctional Facility, Respondents.

Supreme Court

*No. 00–0853–W. Oral argument September 14, 2001.—Decided November 6, 2001.*

2001 WI 119

(Also reported in 635 N.W.2d 292.)

 

For the petitioner there were briefs by *Jeffrey O. Davis, Daniel J. La Fave* and *Quarles & Brady LLP,* Milwaukee, and oral argument by *Daniel J. La Fave.*

For the respondents the cause was argued by *James M. Freimuth,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

¶ 1. ANN WALSH BRADLEY, J. The petitioner, Eugene Nichols, seeks reinstatement of his petition for review that was previously dismissed as untimely filed. He asserts that his petition should be deemed "filed" as of the date that he delivered it to prison authorities for mailing to this court. Although we do not adopt Nichols' definition of "filed," we nevertheless determine that the 30–day deadline for receipt of a petition for review is tolled on the date that a pro se prisoner delivers a correctly addressed petition to the proper prison authorities for mailing. Accordingly, we grant Nichols' requested relief and reinstate his petition for review.

I

¶ 2. The parties have agreed to the facts necessary to our decision in this case. Nichols is a prisoner convicted in Wisconsin who is incarcerated in the North Fork Correctional Facility ("North Fork") in Sayre, Oklahoma. On January 26, 2000, the court of appeals in an unpublished decision affirmed his conviction for battery by a prisoner. Nichols received a copy of the court of appeals decision on January 28. Wisconsin

1015

Stat. § 808.10 (1999–2000)[1] states that a petition for review must be "filed in the supreme court within 30 days of the date of the decision of the court of appeals," making Nichols' petition for review due on February 25, 2000.

¶ 3. Nichols gave his petition for review to the North Fork librarian for copying on February 15, 2000, ten days before the petition's due date. In an affidavit, the librarian stated that prisoner copy requests normally take "between three and seven days" to fill because the prison must first verify whether the prisoner has sufficient funds to pay for the copies.

¶ 4. The librarian returned copies of the petition for review to Nichols in the afternoon of Friday, February 18, 2000. In his habeas petition, Nichols averred that it was too late to mail the petition for review that day because "mail only leaves the institution in the morning." He was unable to mail the petition on Saturday, February 19, because the prison mailroom was not open on Saturdays. Thus, on February 21, a Monday, Nichols delivered his petition for review, properly addressed, to the North Fork mailroom. A North Fork corrections officer processed Nichols' petition for priority mailing. It appears that the petition may not have been mailed until the following day. In an affidavit, the corrections officer that processed Nichols' petition stated that "mail leaving this institution typically does not arrive at its destination before four to ten days have elapsed."

¶ 5. The clerk of this court received Nichols' petition for review on February 28, 2000, one business day late. His petition was dismissed as untimely in a Feb-

---

[1] All subsequent references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

ruary 29 order. On March 24, 2000, Nichols filed a petition for a writ of habeas corpus in this court, asking that we consider his petition for review on its merits because he had acted "diligently and swiftly" in attempting to file the petition. He noted that his petition was mailed early enough that it should have arrived with time to spare.

¶ 6. We initially denied Nichols' habeas petition. He moved for reconsideration, arguing that any delay in the filing of his petition for review was due to prison officials' inadvertence or to prison policies and practices. Under such circumstances, Nichols argued, a petition should be considered "filed" when it is turned over to prison authorities for mailing. In his motion for reconsideration, Nichols referred this court to a then recently issued court of appeals decision, *State ex rel. Shimkus v. Sondalle,* 2000 WI App 238, 239 Wis. 2d 327, 620 N.W.2d 409. In *Shimkus,* the court determined that when a prison inmate deposits a certiorari petition in a prison mail receptacle, the 45–day time limit to file the certiorari action must be tolled. *Id.* at ¶ 14. We granted Nichols' motion for reconsideration.

II

¶ 7. The question before us is whether this court may consider a pro se prisoner's petition for review when the petition was received by the clerk more than 30 days after the date of the court of appeals decision from which the prisoner sought review. In addressing this question, we initially examine both a statute enacted by the legislature and a rule promulgated under this court's rule-making authority. Ultimately, however, our determination is rooted in a review of the rationales and conclusions of prior cases.

### III

¶ 8. Nichols argues that this court should adopt a "prison mailbox" rule with regard to the deadline to file a petition for review under § 808.10 and Wis. Stat. § (Rule) 809.62(1). Section 808.10 states:

> Review by the supreme court. A decision of the court of appeals is reviewable by the supreme court only upon a petition for review granted by the supreme court. The petition for review shall be filed in the supreme court within 30 days of the date of the decision of the court of appeals.

Section (Rule) 809.62(1) states in relevant part:

> A party may file with the supreme court a petition for review of an adverse decision of the court of appeals pursuant to s. 808.10 within 30 days of the date of the decision of the court of appeals.

In asking that we adopt a "prison mailbox" rule, Nichols argues that his petition for review should be considered "filed" for purposes of § 808.10 and § (Rule) 809.62(1) at the time that he delivered his petition to prison authorities for mailing.

¶ 9. As an alternative argument, Nichols asserts that this court should conclude that § 808.10 and § (Rule) 809.62(1) are unconstitutional as applied. He asserts that the State has effectively deprived him of

his statutory 30–day filing period, and that this deprivation violates his constitutional rights to equal protection and due process.[2]

¶ 10. The State disagrees with Nichols that a prison mailbox rule is necessary to save § 808.10 and § (Rule) 809.62(1) from constitutional infirmity. It asserts that the 30–day period is long enough to mitigate any differential impact that incarceration may have on pro se prisoners. However, the State agrees with Nichols that § 808.10 and § (Rule) 809.62(1) could "reasonably be construed to encompass a 'prison mailbox rule.' " Nevertheless, both the State and Nichols acknowledge that on its face, such an interpretation may be strained.

¶ 11. We decline to interpret the term "file" in § 808.10 and § (Rule) 809.62(1) to mean "deposit in a prison mailbox." We agree that such an interpretation may strain the plain language of both the statute and the rule. In addition, such a construction of the word "file" seemingly conflicts with language in our prior decisions.

¶ 12. As both parties acknowledge, we have in the past concluded that "[i]f the clerk of this court does not receive the petition for review *for filing* within that 30 days, this court is deprived of subject matter jurisdiction to review [a court of appeals] decision." *St. John's Home v. Continental Cas. Co.,* 150 Wis. 2d 37, 43, 441 N.W.2d 219 (1989) (emphasis added); *see also First Wis.*

---

[2] Because we determine that the 30–day deadline for receipt of Nichols' petition for review was tolled when he delivered the petition to prison authorities for mailing, we need not address his constitutional arguments.

*Nat'l Bank v. Nicholaou,* 87 Wis. 2d 360, 362, 274 N.W.2d 704 (1979). We have explained:

> The clerk of this court has been designated to receive petitions for review as well as other documents for filing. These documents can either be hand delivered to the clerk's office . . . or mailed to [the clerk's address]. Whatever method of delivery is used, a petition for review must be physically received in the clerk's office within 30 days of the filing of the court of appeals' decision that is to be reviewed.

*St. John's,* 150 Wis. 2d at 42–43 (citations omitted). In *Gunderson v. DOT,* 106 Wis. 2d 611, 615, 318 N.W.2d 779 (1982), we reiterated that "the filing of a petition does not occur upon its mailing."

¶ 13. We reaffirm the general vitality of the petition for review filing requirements as outlined in *Nicholaou, Gunderson,* and *St. John's.* However, this does not mean that Nichols is without relief.

¶ 14. In a recent court of appeals decision, *Shimkus,* 2000 WI App 238, a pro se prisoner, Mark Shimkus, sought circuit court certiorari review of a prison disciplinary committee decision pursuant to Wis. Stat. § 893.735.[3] Under § 893.735, a prisoner seeking such review generally has 45 days from the date of a

---

[3] Wisconsin Stat. § 893.735 states, in part:

(2) An action seeking a remedy available by certiorari made on behalf of a prisoner is barred unless commenced within 45 days after the cause of action accrues. The 45–day period shall begin on the date of the decision or disposition, except that the court may extend the period by as many days as the prisoner proves have elapsed between the decision or disposition and the prisoner's actual notice of the decision or disposition. . . .

(3) In this section, an action seeking a remedy available by certiorari is commenced at the time that the prisoner files a petition seeking a writ of certiorari with a court.

final administrative decision to file an action in circuit court for review. Although Shimkus placed his petition for a writ of certiorari in prison mail 12 days prior to the 45–day deadline, the clerk of court did not receive his petition until three days after the deadline. *Id.* at ¶ 3. The circuit court dismissed Shimkus's petition as untimely filed. *Id.*

¶ 15. The court of appeals reversed, concluding that when a prison inmate deposits a certiorari petition in a prison mail receptacle, the 45–day time limit to file the certiorari action must be tolled. *Shimkus,* 2000 WI App 238, ¶ 14. In reaching this conclusion, the court relied heavily on the rationale in the Supreme Court's decision in *Houston v. Lack,* 487 U.S. 266 (1988).

¶ 16. In *Houston,* 487 U.S. at 270–71, the Supreme Court explained the obstacles that pro se prisoner litigants face in filing documents. The Court stated:

> Such prisoners cannot take the steps other litigants can take to monitor the processing of their notices of appeal and to ensure that the court clerk receives and stamps their notices of appeal before the 30–day deadline. Unlike other litigants, pro se prisoners cannot personally travel to the courthouse to see that the notice is stamped "filed" or to establish the date on which the court received the notice. Other litigants may choose to entrust their appeals to the vagaries of the mail and the clerk's process for stamping incoming papers, but only the pro se prisoner is forced to do so by his situation.

¶ 17. The Court in *Houston* emphasized the lack of control and certainty pro se prisoners have with regard to the filing of documents:

> [T]he pro se prisoner has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may

1021

have every incentive to delay. No matter how far in advance the pro se prisoner delivers his notice to the prison authorities, he can never be *sure* that it will ultimately get stamped "filed" on time.

*Houston*, 487 U.S. at 271 (emphasis in original). The *Houston* Court concluded that a pro se prisoner's notice of appeal from the denial of his federal habeas corpus petition was "filed at the time [he] delivered it to the prison authorities for forwarding to the court clerk." *Id.* at 276.

¶ 18. The *Houston* Court grounded its holding not in the United States Constitution, but in an interpretation of the definition of the word "filed" in Federal Rule of Appellate Procedure 4(a)(1). *See Houston*, 487 U.S. at 268, 272; *see also Shimkus*, 2000 WI App 238, ¶ 8.[4] Nevertheless, a number of state supreme courts have adopted *Houston*'s rationale in concluding that a petition for review or other document is "filed" at the time that a pro se prisoner delivers it to the proper prison authorities for mailing. *See, e.g., Haag v. State,* 591 So. 2d 614, 617 (Fla. 1992); *Woody v. State,* 833 P.2d 257, 259–60 (Okla. 1992); *Commonwealth v. Jones,* 700 A.2d 423, 425–26 (Pa. 1997). Other state supreme courts have rejected *Houston* and concluded that the word "file" may not be interpreted to encompass any

---

[4] Because it is not based in the United States Constitution, the *Houston* decision is not binding on this court. However, as this court and the court of appeals have noted, it is not uncommon for Wisconsin appellate courts to follow the reasoning of federal court decisions that we consider persuasive on a particular point of law. *See American Med. Transp. v. Curtis-Universal, Inc.,* 154 Wis. 2d 135, 152, 452 N.W.2d 575 (1990); *State ex rel. Shimkus v. Sondalle,* 2000 WI App 238, ¶ 8, 239 Wis. 2d 327, 620 N.W.2d 409.

such rule. *See, e.g., Carr v. State,* 554 A.2d 778, 780 (Del. 1989); *State ex rel. Tyler v. Alexander,* 555 N.E.2d 966 (Ohio 1990).

¶ 19. In *Shimkus,* 2000 WI App 238, ¶ 9, the court of appeals concluded that the rationale in *Houston* was "equally applicable" to the facts before it. However, the court of appeals declined to adopt the *Houston* Court's holding insofar as *Houston* concluded that the deposit of a pleading or notice in a prison mail receptacle constituted "filing" within the meaning of a time-limit statute. *Id.* The court of appeals reasoned that the procedures for commencing an action under § 893.735 are more complex than the procedures for filing a notice of appeal in federal court. *Id.*

¶ 20. In declining to adopt the *Houston* mailbox rule, the court of appeals seemed to recognize that an interpretation of "file" to mean "deposit in the prison mail receptacle" might prove problematic. *See Shimkus,* 2000 WI App 238, ¶ 9. The court noted that there is a difference in the filing procedures for the federal rule discussed in *Houston* and the Wisconsin rules at issue in Shimkus's case. *Id.* The federal rule related to the "simple act of filing a notice of appeal." The court of appeals emphasized that "nothing more is required for institution of the appeal proceedings." *Id.*

¶ 21. The court in *Shimkus* contrasted this "simple act" with the more involved process in Wisconsin for the commencement of a civil action by a pro se prisoner under § 893.735(2). 2000 WI App 238, ¶ 9. A civil action is not commenced until a filing fee is paid "unless payment is waived by the court for cause shown." *Id.; see also* Wis. Stat. §§ 801.02(6) and 814.29(1). In order to commence a certiorari action without full prepayment of the required fees, the prisoner must submit to the circuit court an affidavit of

indigency and a trust fund account statement for the preceding six-month period. *Shimkus*, 2000 WI App 238, ¶ 9. Thus, the *Shimkus* court concluded, the proper course was to toll the statutory 45–day time limit between the time the prisoner deposited the appropriate documents in the prison mail receptacle and the time of their receipt by the clerk of court. *Id.*

¶ 22. Wisconsin cases have since built upon the *Shimkus* tolling rule in the context of pro se prisoner certiorari actions under § 893.735. In *State ex rel. Locklear v. Schwarz*, 2001 WI App 74, ¶¶ 5, 26, 242 Wis. 2d 327, 629 N.W.2d 30, the court of appeals concluded that the § 893.735 45–day time limit should also toll where a pro se prisoner has requested a "three-strikes" certification from the Department of Justice.[5] The court reasoned that pro se prisoners have no choice but to entrust their papers to prison officials who they "cannot control or supervise" and who "may have every incentive to delay." *Id.* at ¶ 26 (quoting *State ex rel. Steldt v. McCaughtry*, 2000 WI App 176, ¶ 8, 238 Wis. 2d 393, 617 N.W.2d 201.)

¶ 23. Likewise, in *State ex rel. Walker v. McCaughtry*, 2001 WI App 110, ¶ 16, 244 Wis. 2d 177, 629 N.W.2d 17, the court of appeals concluded that the 45–day time limit could also toll where a prisoner has requested a trust account statement from the Depart-

---

[5] Under Wis. Stat. § 801.02(7)(d), a circuit court must dismiss an action by a prisoner seeking to waive the prepayment of filing fees where that prisoner:

> has, on 3 or more prior occasions, while he or she was incarcerated, imprisoned, confined or detained in a jail or prison, brought an appeal, writ of error, action or special proceeding, including a petition for a common law writ of certiorari, that was dismissed by a state or federal court for any of the reasons listed in s. 802.05(3)(b) 1. to 4.

ment of Corrections as proof of indigency. The court explained the combined effect of its tolling rules, again based on the *Houston* rationale: "[T]he tolling begins when the documents over which prisoners have control have been mailed, and all of the documents over which prisoners have no control have been requested." *Id.* at ¶ 18. Referring to the 45–day statutory deadline, the court explained that "[b]y requiring prisoners to submit documents under their control within a designated period, the prisoner is treated equitably and the legislative intent is fulfilled." *Id.*

¶ 24. We are persuaded by the rationale in *Houston* and by the approach in *Shimkus* and its progeny. Accordingly, we apply a similar tolling rule to pro se prisoners who file petitions for review in this court.

¶ 25. While the procedures for commencing a civil action as discussed in *Shimkus* are not the same as those for filing a petition for review, both require filing fees and establish a separate procedure for waiver of those fees. Under Wis. Stat. § (Rule) 809.25(2)(a)1., the clerk of court "shall charge" $150 for the filing of a petition for review. However, a petitioner may seek a waiver of the fee by supplying this court with an affidavit of indigency. Wis. S. Ct. IOP II.L.2. (Mar. 16, 2000). Thus, as in *Shimkus,* a definition of "file" as "deposit in the prison mail receptacle" may be problematic in light of these procedures.

¶ 26. In addition, a tolling rule will avoid vexing questions as to the proper course of action where it appears that a pro se prisoner's petition is untimely because of prison authorities' failure to promptly mail or forward it. *See Houston,* 487 U.S. at 276; *Shimkus,* 2000 WI App 238, ¶ 6 n.4. We recognize that a tolling rule will not eliminate the potential for all factual disputes. Nevertheless, we are convinced that this po-

tential is small, particularly when considered in light of an alternative such as case-by-case inquiries into whether prison officials improperly delayed the mailing.

¶ 27. While we do not mandate any particular procedure that litigants must follow, we note that both Nichols and the State agree that the factual question of the proper tolling date could be relatively easily resolved in most cases by the use of a certificate of service or affidavit of mailing. Such a certificate or affidavit may be desirable in that, as the State avers, many prisons do not have a general "log-in" system that identifies the date on which a prisoner submits outgoing mail. A certificate or affidavit would create a rebuttable presumption that the prisoner had delivered his or her petition to the proper prison authorities on the particular day certified. We note, however, that a tolling rule will not excuse a pro se prisoner who ultimately fails to pay filing fees, address the petition properly, or otherwise comply with filing requirements.

¶ 28. The tolling rule will ensure the proper treatment of pro se prisoners who file petitions for review. When pro se prisoners seek to file petitions, their control over the filing process is circumscribed by prison rules and procedures. Pro se prisoners' choice in method of filing is no choice at all. They must rely on the "vagaries of the mail." Other petitioners may personally deliver their petitions to the clerk of court's office, even at the last possible moment. We discern no convincing reason why pro se prisoners who act more promptly and otherwise comply with filing requirements should be placed at a disadvantage.

¶ 29. Finally, we turn to the question of whether the tolling rule we adopt today should receive prospective or retroactive application. In its brief, the State

argues that to the extent this court grants relief, the rule should apply to Nichols, but should otherwise be prospective. In his reply brief, Nichols states that he takes no position on whether a prison mailbox rule should apply retroactively to others similarly situated, so long as he receives the benefit of the rule.

¶ 30. The State acknowledges that with respect to litigants other than Nichols, the proper retroactivity doctrine to apply is not immediately apparent. It recognizes that a holding in this case could be viewed as a rule of criminal procedure, applying retroactively to all cases pending on direct review or not yet final. *See Griffith v. Kentucky,* 479 U.S. 314 (1987). Yet, because § 808.10 applies to all petitions for review, both civil and criminal, it is unclear if the retroactivity analysis used in civil cases should govern. *See Chevron Oil Co. v. Huson,* 404 U.S. 97 (1971).

¶ 31. Given this uncertainty, we decline to decide whether the rule should be prospective or retroactive. Such a determination should be made with the benefit of briefs and argument on the merits by parties who take adverse positions. *See Sopha v. Owens-Corning Fiberglas Corp.,* 230 Wis. 2d 212, 244, 601 N.W.2d 627 (1999).

¶ 32. In sum, we conclude that the 30–day deadline for receipt of a petition for review is tolled on the date that a pro se prisoner delivers a correctly addressed petition to the proper prison authorities for mailing.[6] Here, Nichols delivered his correctly ad-

---

[6] In *Houston v. Lack,* 487 U.S. 266, 268 (1988), the Supreme Court described "delivery to prison authorities" as the act that constituted filing, whereas in *Shimkus,* 2000 WI App 238, ¶ 1, the court of appeals described "deposited in the prison mail

dressed petition on the 26th day. Therefore, we determine that this court may consider Nichols' pro se petition for review even though it was received in the clerk's office more than 30 days after the date of the court of appeals decision.

*By the Court.*—The petition for habeas corpus is granted; rights declared.

receptacle" as the act that triggered tolling. Consistent with the facts in this case, we have used the phrase "delivers . . . to prison authorities" as the act that triggers our tolling rule. We recognize that different prisons may have different procedures for outgoing prisoner mail. The important point is that in order to trigger tolling, the pro se prisoner must follow prison rules or practices as to outgoing mail whether they require placing the mail in the hands of certain prison authorities, depositing mail in a designated receptacle, or some other procedure.