**COURT OF APPEALS
DECISION
DATED AND FILED**

**September 9, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.  *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP500-CR**

STATE OF WISCONSIN

Cir. Ct. No.  2020CM223

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

  PLAINTIFF-APPELLANT,

 V.

ANNIKA S. CHRISTENSEN,

  DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Jefferson County: WILLIAM V. GRUBER, Judge.  *Affirmed and cause remanded for further proceedings.*

¶1    BLANCHARD, P.J.[1]  The State appeals the circuit court's order granting Annika Christensen's motion to suppress evidence that she possessed the

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

active ingredient in marijuana, other controlled substances, and drug paraphernalia. The issue is whether Christensen was seized by police for purposes of the Fourth Amendment when the following occurred: while Christensen sat in the driver's seat of a car parked in a lot after dark one night, two uniformed officers parked a fully marked police truck closely behind the car, shined a spotlight on the car (although without activating the truck's emergency lights), and at least one of the officers approached the car on foot, with that officer identifying himself as law enforcement and knocking on the passenger-side window. The State does not challenge the circuit court's conclusion that, leading up to the moment when the officer knocked on the window, the officers lacked reasonable suspicion that she had been or was committing a crime, or was about to commit one. Instead, the State argues that the court erred in concluding that this constituted a seizure of Christensen, given the totality of the circumstances. I reject that argument. The State does not show that the court clearly erred in finding that a reasonable person in Christensen's position would have had, in the words of the court, an "actual or perceived inability to" drive away from the police. Bearing that finding in mind as a key fact, I conclude that she was seized under the totality of the circumstances. Accordingly, I affirm the decision to grant the suppression motion.

## BACKGROUND

¶2 As explained further below, the circuit court held two different evidentiary hearings on a motion to suppress filed by Christensen. The following is a summary of evidence presented at the initial hearing, which included the testimony of two Town of Lake Mills police officers.

2

¶3    On a Tuesday in November 2019, Officer Pagliaro and Sergeant Walters were on routine patrol together in marked police truck.  At approximately 6:49 p.m., after it was dark out, the officers noticed two cars parked next to each other near one corner of a parking lot.[2]  In one of the two cars, Christensen was seated in the driver's seat and another person was in the front passenger seat.

¶4    The lot was on land owned by the state Department of Natural Resources.  It was a square lot, with a gravel and dirt surface.  It provided access to trails leading to the Glacial Drumlin Bike Trail.  A single entrance-exit allowed vehicle access to and from the adjoining roadway.  The lot was large enough to accommodate multiple rows of vehicles, as opposed to a single row (but no witness testified regarding the dimensions of the lot).  There were trees on land adjoining half the lot; the land adjoining the other half consisted of fields.

¶5    The corner of the lot where the two cars were parked was next to the tree area.  This prevented the car Christensen was in from being able to pull forward or to the right.  There was no testimony regarding whether the edge of the lot had any barriers or obstacles such as curbs or parking blocks.

¶6    I pause this summary to discuss video evidence.  The record reflects that the State presented two pieces of video evidence to the circuit court at the hearing.  One video was taken from Sgt. Walters' body camera.  The other video purportedly showed the distance between the police truck, once it was brought to a

---

[2] This summary of the evidence focuses on details pertinent to determining whether Christensen was seized for Fourth Amendment purposes under the totality of the circumstances as of the moment when the officer knocked on the car window.  Accordingly, it omits details that are pertinent only to the circuit court's unchallenged determination that the officers lacked reasonable suspicion before then.

halt, and the already parked car that Christensen was in. The record is unclear whether the second video was taken from an earlier portion of that same body-camera footage, or instead from a different camera (perhaps a dashboard-mounted squad video). However, no video evidence was included in the record. Therefore, the circuit court had the benefit of evidence that I have no access to. When the appellate record is incomplete, I assume that the missing material supports the circuit court's ruling. *See **State ex rel. Locklear v. Schwarz***, 2001 WI App 74, ¶30 n.2, 242 Wis. 2d 327, 629 N.W.2d 30.

¶7    I resume the background while bearing in mind this hole in the record on appeal. Sergeant Walters drove the police truck onto the lot and parked it. He parked approximately 10 feet behind the two already parked cars.[3] Walters parked the police truck "inside the entrance" to the lot, not blocking the entrance, adding that the truck "may have been close to the entrance."

¶8    Both officers testified to their assessments of whether, after Sgt. Walters brought the police truck to a stop, Christensen could have driven her car out of the lot. Both said they thought she could, although Sgt. Walters testified that "[i]t would have been tight." Walters testified, "I don't know if [she] would have been able to do it in one maneuver. [She] may have had to back up and pull forward to go around the back side of my vehicle."

---

[3] The two officers gave different estimates for the distance between the police truck, once stopped, and the already parked car in which Christensen was sitting. The circuit court credited Sgt. Walters' estimate of 10 feet (putting aside whatever reasonable inferences the circuit court might have drawn from video evidence regarding distances).

¶9     Sergeant Walters shined a post-mount spotlight attached to the police truck on the car Christensen was in. Walters did not activate the truck's blue and red emergency lights.

¶10    Officer Pagliaro got out of the police truck from the passenger side and approached the car Christensen was in on its passenger side. As he approached, Pagliaro announced that he was a police officer. He knocked on the front passenger-side window.[4] At issue here are all circumstances bearing on a potential seizure leading up to, and including, the knock on the window.

¶11    For context, I note the following additional allegations testified to by Ofc. Pagliaro. The passenger lowered the car window in response to the knock, at which point Pagliaro could smell burnt marijuana coming from inside the car.

¶12    Christensen moved to suppress evidence that resulted from what she contended was an unjustified seizure before Ofc. Pagliaro allegedly smelled burnt marijuana. As part of this argument, Christensen contended that the officers did not have reasonable suspicion that a crime was afoot before Pagliaro knocked on the window. The State contended that Christensen was not seized for Fourth

---

[4] There was uncontested evidence that Ofc. Pagliaro knocked on the passenger window of the car Christensen was in, although this requires explanation. After the close of evidence at the initial motion hearing, Christensen's counsel said that "there certainly wasn't a rapping on the window," and that the officer could not have rapped on the window because it was "already rolled down." Counsel apparently based this statement on her interpretation of the video evidence that is not contained in the record on appeal. But whatever counsel meant to convey, based on whatever evidence, there was no evidence offered to rebut Pagliaro's testimony that he knocked on the passenger window. In addition, the State takes the position on appeal that the knock occurred. Further, I assume the existence of all facts that could have been revealed in the video shown at the hearing that favor the court's suppression ruling. In granting the motion to suppress, the circuit court did not explicitly discuss the knock, "but 'if a circuit court fails to make a finding that exists in the record, an appellate court can assume that the circuit court determined the fact in a manner that supports the circuit court's ultimate decision.'" *See County of Grant v. Vogt*, 2014 WI 76, ¶41, 356 Wis. 2d 343, 850 N.W.2d 253 (quoted source omitted).

Amendment purposes by the time Pagliaro alleged that he smelled burnt marijuana. Christensen does not dispute that, as of that time, the officers could justifiably search the vehicle for evidence of crimes. In the alternative, the State made the argument (now abandoned on appeal) that, even before Pagliaro allegedly smelled marijuana, the totality of the circumstances provided reasonable suspicion that could justify a seizure.

¶13 The circuit court initially denied Christensen's motion based solely on a determination that the officers had reasonable suspicion before Sgt. Walters parked the police truck behind the car that Christensen was in. The court did not address the issue of whether the totality of the circumstances before the knock on the window constituted a seizure. The court effectively assumed without deciding that this did constitute a seizure and with that assumption concluded that the seizure was justified by reasonable suspicion.

¶14 Christensen moved for reconsideration, which the court denied. Christensen then moved to reopen evidence related to the suppression motion so that she could submit the results of a public records request that she had made for records documenting police responses to the DNR parking lot regarding alleged drug dealing (relevant because part of the State's argument for reasonable suspicion was an alleged history of drug dealing at the lot). Because the State has abandoned the reasonable suspicion issue on appeal, the exact nature of this evidence or the grounds for the reconsideration motion are not pertinent to the analysis.

¶15 In light of the newly submitted evidence, the circuit court held another evidentiary hearing and reevaluated its earlier ruling on the suppression

motion.  Based on the results of that hearing and its reconsideration of the suppression motion, the court granted the motion to suppress.

¶16    Regarding Christensen's ability to drive out of the lot after Sgt. Walters parked the police truck, the court found that  "Christensen was—I'm not going to say cornered, but it would have been very difficult for her to just back out."  The court went on to note that the police truck was marked, that what the court referred to as the truck's "take-down" light was used to illuminate the car, and that "two uniformed government agents, both armed" approached the car leading up to the knock on the window.[5]  The court then further said:

> [G]iven all those circumstances, especially the positioning of the vehicles and the either … actual or perceived inability [of Christensen] to just [drive] out of that lot, where I land [is that this] was … not a consensual contact.

---

[5] I now explain why I assume that the circuit court's potential findings regarding the number of "government agents" has little or no significance in determining whether there was a seizure.  I understand the circuit court's reference to "two uniformed government agents" to mean that Christensen would have been aware of Sgt. Walters' presence during pertinent events, perhaps because Walters had gotten out of the truck and begun approaching the car before Ofc. Pagliaro knocked on the window.  (There is no dispute that, at some point, Walters approached the car and made contact with Christensen.)  Although Walters testified that he was still in the police truck when Pagliaro made contact with the passenger of the car, and there appears to be no evidence in the record that contradicts that testimony, the circuit court's apparent finding that Walters was at a minimum visible to Christensen, or perhaps approached the car, before Pagliaro knocked on the window could be supported by the video evidence that is missing from the record.

However, assuming without deciding that the circuit court's apparent finding was supported by the video evidence, I question whether it would be significant to the analysis.  The mere presence of Sgt. Walters on the scene, even if he had gotten out of the truck during the pertinent time frame, could not contribute meaningfully to a determination that a seizure occurred in the absence of evidence of assertive or intimidating behavior on his part.  *See State v. Williams*, 2002 WI 94, ¶32, 255 Wis. 2d 1, 646 N.W.2d 834 ("the presence and behavior of the back-up officer was not so intimidating as to convert … consensual exchange into a seizure" when the officer stood at the passenger side of the defendant's vehicle).  In sum, it was significant that at least one uniformed officer approached Christensen's car, announced his office, and knocked on the window, but the fact that another officer was present could at most play only a small role in the analysis.

> And … I think what the testimony indicated was that that there was only one point of exit and entrance to that DNR lot. That would have had an impact too if there [had been] another egress point for vehicular traffic.

Because the seizure was not supported by reasonable suspicion, the court granted the motion to suppress. The State appeals, seeking reversal of the suppression ruling. *See* WIS. STAT. § 974.05(1)(d)2. ("appeal may be taken by the state from any[] … [o]rder … the substantive effect of which results in" the suppression of evidence).

## DISCUSSION

¶17 The sole issue on appeal is whether Christensen was seized by the time Ofc. Pagliaro knocked on the passenger-side window of the car. The State argues that the answer is no and therefore the lowering of the window was part of a "consensual encounter" to which Fourth Amendment requirements do not apply. *See County of Grant v. Vogt*, 2014 WI 76, ¶¶19, 24, 26, 356 Wis. 2d 343, 850 N.W.2d 253 (constitutional protections "are not implicated until a government agent 'seizes' a person"; distinguishing between seizures and consensual interactions between law enforcement officers and persons they interact with). I understand Christensen to take the position that, given all of the circumstances, a reasonable person in her position would not have felt free to drive away from the lot as of the moment when Pagliaro knocked on the window, and that as a result she was seized no later than that moment. I agree with Christensen.

¶18 A two-part standard of review applies. *See id.*, ¶17. I "will uphold the circuit court's findings of fact unless they are clearly erroneous," but independently apply constitutional principles to those facts. *See id.*

8

¶19 In order for a seizure to occur, an "'officer, by means of physical force or show of authority,'" must "'in some way restrain[] the liberty of a citizen.'" ***Id.***, ¶20 (quoting ***United States v. Mendenhall***, 446 U.S. 544, 552 (1980)). Not every show of authority by police creates a seizure. *See **id.*** ("'a person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave'" (quoting ***Mendenhall***, 446 U.S. at 554)).[6] "The test is an objective one, focusing not on whether the defendant himself felt free to leave but whether a reasonable person, under all the circumstances, would have felt free to leave." ***State v. Williams***, 2002 WI 94, ¶23, 255 Wis. 2d 1, 646 N.W.2d 834. "[E]xamples of circumstances that might suggest a seizure" include "'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'" *See **Vogt***, 356 Wis. 2d 343, ¶23 (quoting ***Mendenhall***, 446 U.S. at 554).

¶20 I conclude that following circumstances created a seizure: the stopping of the marked police truck close behind the parked car, causing a reasonable person in Christensen's position to have an "actual or perceived inability" to drive away from the police; the use of post-mounted light to illuminate the car; the presence of uniformed officers in the marked truck, at least

---

[6] An additional rule is that there can be no seizure if "the citizen [does not] actually yield to [the] show of authority," *see **State v. Kelsey C.R.***, 2001 WI 54, ¶¶32-33, 243 Wis. 2d 422, 626 N.W.2d 777 (discussing ***California v. Hodari D.***, 499 U.S. 621 (1991)), but the State here does not argue that the conduct of either Christensen or the passenger before the knock on the window constituted a failure to yield to the show of authority.

one of whom approached the car; and Ofc. Pagliaro's announcing himself as law enforcement and knocking on the passenger-side window. As Christensen notes, the State does not contend that any of the court's factual findings were clearly erroneous. Under these circumstances, a reasonable person in Christensen's position would not have felt free to leave. I now explain this conclusion further, beginning with the significance of the circuit court's findings regarding both the *ability* of a reasonable person in Christensen's position to leave the police by driving out of the lot and the reasonable *perception* of that person about her ability to do so.

¶21 On the topic of the police truck's stopped position relative to the parked car, the State characterizes the circuit court's findings as "just that it would have been difficult for [Christensen]" to "have driven away." This is at best an incomplete interpretation of the court's findings.

¶22 First, the court found that it would have been "very difficult" for her to drive out of the lot past the police truck. This was a finding that, from the perspective of an objective observer looking down on the scene, it would in fact have been a challenge for Christensen to maneuver herself out of the lot. She objectively might have been able to accomplish this, but it would have been "very difficult."

¶23 Second, and critically, the court also found that there was an "actual or perceived inability" to do so. This was a finding that a reasonable person in Christensen's position would have worried that she could not actually drive off the lot. In other words, this would have been a reasonable perception under the circumstances.

¶24    As I now explain, this distinguishes the instant case from two cases with otherwise generally similar facts (police vehicles, without activating emergency lights, come to a stop near vehicles parked in lots) that the State cites: *Vogt*, and this court's unpublished one-judge decision in *State v. Snyder*, No. 2013AP299-CR, unpublished slip op. (WI App Oct. 2, 2014).

¶25    In *Vogt*, our supreme court surveyed case law from other jurisdictions and concluded that it "demonstrate[d] that when an officer parks near a person's vehicle, gets out, and knocks on the person's window, the officer has *not necessarily* displayed sufficient authority to cause a reasonable person to feel that he or she was not free to leave." *Vogt*, 356 Wis. 2d 343, ¶38 (emphasis added).  Under the particular facts of *Vogt*, there was not a seizure, although the court characterized it as a "close case." *Id.*, ¶¶3, 54.  There, the officer parked "right behind" Vogt's vehicle, which also had obstacles on either side, thus "'the location of Mr. Vogt's vehicle in the parking lot was not conducive to simply driving away.'" *Id.*, ¶40 (quoting briefing from *Vogt*).  But, while "not conducive to simply driving away" due to the obstructions on three sides, Vogt "might have had 50 feet in front of him in which he could have pulled forward and turned around" to exit the lot. *Id.*, ¶42.  That contrasts sharply with the facts here.  Based on the circuit court's findings here, unchallenged on appeal, the combination of the parked police truck, the location of the car, and the layout of the gravel-dirt lot presented a much stronger indication of a seizure.

¶26    In *Snyder*, this court reasoned that the mere fact that a person needed to maneuver a vehicle to drive around a parked police vehicle in order to leave the presence of police was not a basis to distinguish *Vogt* and did not weigh significantly in favor of a seizure. *Snyder*, No. 2013AP299-CR, ¶19.  But *Snyder* could not, and does not purport to, go beyond *Vogt*, which itself does not articulate

a rule that the only way a police vehicle stopping near a parked car can contribute to a seizure is by entirely eliminating any possibility of driving away. And, as with the fact in *Vogt*, the facts in *Snyder* presented far less obstruction of the defendant's vehicle than do the facts here. *See Snyder*, No. 2013AP299-CR, ¶4 (trooper parked two car-lengths away, facing defendant's car, with 20 feet of open "driveway" available for the defendant to drive through).

¶27 Staying on the topic of the ability to drive away from a nearby, parked police vehicle, this court's decision in *State v. Evans*, No. 2020AP286-CR, unpublished slip op. (Jan. 28, 2021), is persuasive in reinforcing my conclusion. In *Evans*, this court concluded that the driver of a parked car would not have felt free to leave after two marked police cars pulled up approximately on either side of the driver's car in a "pincer-like formation," even though there was space for the driver to back out between the two police cars. *Id.*, ¶¶13, 20-21, 27. Despite the driver's ability to drive away in *Evans*, the other circumstances of the police cars' approaches created an "adversarial" interaction that sent a "strong and unambiguous signal of authority." *See id.*, ¶¶22-26. This court further noted that "[n]umerous federal courts have found that blocking the movement of a vehicle may be a seizure, even if the car is not wholly blocked from leaving." *Id.*, ¶17 (gathering authority).

¶28 Several additional facts here support the circuit court's suppression ruling. The use of a spotlight to illuminate the car, while not sufficient by itself to create a seizure, is an "indicia of police authority." *See State v. Young*, 2006 WI 98, ¶65, 294 Wis. 2d 1, 717 N.W.2d 729. The State concedes that the use of the spotlight constituted a relevant show of authority.

¶29 Further, while also not dispositive, the presence of uniformed officers arriving on the scene in a marked truck, with at least one of the officers getting out and approaching the car on foot, weighs in favor of a seizure. I reject the State's thinly developed argument to the contrary. It is sufficient to explain that the State appears to misinterpret passages in *Vogt* addressing the existence of general "social norms" under which many members of the public naturally comply with the inquiries of police officers. *See Vogt*, 356 Wis. 2d 343, ¶31. The reasoning in *Vogt* is consistent with the fact that, all else being equal, an interaction that an individual has with uniformed, visibly armed officers who have approached from a marked vehicle is more intimidating than an interaction involving the approach of the same number of officers in plain clothes, without weapons displayed, who arrive in an unmarked vehicle.

¶30 Moreover, given all of the surrounding circumstances such as the approach of at least one uniformed officer, I conclude that Ofc. Pagliaro's announcing himself as a law enforcement officer and knocking on the passenger's window added authoritative signals to the occupants of the car that they were not free to drive away without first interacting with the officers. In making this point, I am mindful of our supreme court's analysis in *Vogt*, noted above. *See id.*, ¶¶26, 31, 42-43. *Vogt* confirms that, in itself, an officer knocking on the window of a parked car does not *necessarily* result in a seizure, depending on all other relevant circumstances. However, *Vogt* cannot be interpreted to mean that similar police conduct cannot contribute to a reasonable person's belief that the person is not free to leave. Here, in contrast to the facts in *Vogt*, Pagliaro's knock, paired with the way the officers parked their truck, trained their spotlight, and approached the car, clearly communicated an intent not only to contact the car's occupants, but to detain them, either briefly or more long term.

13

¶31 One final note regarding next steps in this case. The parties' respective requests for relief in this criminal case are limited to either the affirmance or reversal of the circuit court's suppression motion ruling in its entirety. The parties do not address the scope of the suppression ruling, nor do they request that this court address the need for, or scope of, further proceedings in the circuit court following remand. All such next steps are left for the circuit court to address on remand, consistent with this opinion.

## CONCLUSION

¶32 For all of these reasons, I affirm the circuit court's order granting Christensen's motion to suppress evidence and remand the case for further proceedings consistent with this opinion.

*By the Court.*—Order affirmed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.