STATE of Wisconsin EX REL. Mark SHIMKUS, Petitioner-Appellant,

v.

Kenneth SONDALLE, Warden, Fox Lake Correctional Institution, Respondent-Respondent.

Court of Appeals

*No. 00–0324. Submitted on briefs June 23, 2000.—Decided September 14, 2000.*

2000 WI App 238

(Also reported in 620 N.W.2d 409.)

Before Eich, Vergeront and Roggensack, JJ.

¶ 1.   EICH, J.   Mark Shimkus, an inmate of the Fox Lake Correctional Institution, appearing pro se, appeals from an order dismissing his certiorari petition challenging the decision of a prison disciplinary committee. The circuit court dismissed the petition as untimely filed. Because it is undisputed that Shimkus deposited his petition, along with an authorization to withdraw the filing fee from his prison account, in the appropriate mail receptacle at Fox Lake well within the time limit for filing such actions, we reverse, concluding that, under these circumstances, the forty-five day time limit for filing such petitions set forth in WIS. STAT. § 893.735(2) (1997–98) is tolled.[1]

¶ 1a.   Shimkus was found by a Fox Lake "adjustment committee" to have violated certain prison rules, and discipline was imposed. Following the serpentine procedures applicable to such cases, he then appealed

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

the committee's decision to the institution's warden, who affirmed the adjustment committee's decision. As required by the exhaustion-of-remedies provisions of WIS. STAT. § 801.02(7), Shimkus then sought relief through the Inmate Complaint Review System at Fox Lake. His case was dismissed by a hearing officer, and he appealed that decision to the secretary of the department of corrections. The secretary, accepting the hearing officer's recommendations, dismissed Shimkus's complaint on August 6, 1999, finally setting the stage for certiorari review in circuit court.

■

¶ 2.  WISCONSIN STAT. § 893.735(2) states that prisoner certiorari actions are barred if not commenced within forty-five days of the date of the final decision or disposition of the matter by prison authorities. The statute goes on to state that an action is "commenced" within the meaning of the law "at the time that the prisoner files a [certiorari] petition . . . with a court." Section 893.735(2). In Shimkus's case, the forty-five-day period would expire on September 20, 1999.

¶ 3.  Shimkus placed his petition, properly addressed (and apparently carrying the necessary authorization for payment of the filling fee from his prison trust account),[2] in the prison mailbox on September 8—twelve days prior to the deadline. For

[2] The State suggests in its brief that we cannot consider the disbursement authorization to which Shimkus refers because it is "unauthenticated." We note in this regard, however, that the record, presumably approved by both parties, includes a copy of a "Disbursement Request" dated September 6, 1999. And although it is not "authenticated," as the State says, it is a Department of Corrections form, it contains an approval signature, it requests that the institution pay the sum of $122 out of Shimkus's account for "Filing fee for certiorari" to the Dodge

reasons not explained in the record, the document was not received by the Dodge County Clerk of Circuit Court until September 23—three days past the forty-five day deadline. As indicated, the circuit court, on the department's motion, dismissed Shimkus's action as untimely filed.

¶ 4. Shimkus argues on appeal that we should reverse, applying the rationale of *Houston v. Lack*, 487 U.S. 266 (1988), where the United States Supreme Court held that, under a federal rule of appellate procedure which, at that time, required appeals from denials of habeas corpus petitions to be "filed with the district [court] clerk" within thirty days,[3] a prisoner's notice of appeal was deemed to be "filed" within the meaning of the rule at the moment of delivery to prison authorities for forwarding to the district court. *Id.* at 276.

¶ 5. Houston's petition was denied by the district court on January 7, 1986. He drafted a notice of appeal and, on February 3—twenty-seven days after entry of the dismissal order—deposited it with prison authorities for mailing to the court. And while there was no evidence as to when the prison authorities actually mailed the document, or when it was received by the court—and some evidence that Houston may have inadvertently addressed the envelope to the Tennessee Supreme Court, rather than the federal district

County Clerk of Courts, and it indicates that a check in that amount was issued on September 20, 1999.

The State, conceding the point for purposes of its argument, goes on to say that, even assuming everything was in proper order, Shimkus should bear the blame for the late filing because he could have placed the packet in the mail several days earlier. As indicated below, we disagree with that proposition.

[3] The rule, F.R.A.P. 4(a)(1), 28 U.S.C. § 2254, now provides a sixty-day deadline.

court—the notice was stamped "filed" by the court's clerk on February 7, thirty-one days after entry of the order denying his petition. *See id.* at 268. Houston's appeal was dismissed for want of jurisdiction due to the untimely filing of the notice, and he appealed. The Supreme Court reversed, holding that Houston's delivery of the notice of appeal to the prison authorities constituted filing it with the court within the meaning of the rule. In so holding the Court emphasized the "unique" status of incarcerated pro se litigants in this regard—that unlike other litigants, they cannot personally ensure receipt of legal papers by the required officers or agencies.

> [P]ro se prisoners cannot personally travel to the court house to see that the notice is stamped "filed" or to establish the date on which the court received the notice. Other litigants may choose to entrust their appeals to the vagaries of the mail and the clerk's process for stamping incoming papers, but only the pro se prisoner is forced to do so by his situation. And if other litigants do choose to use the mails they can at least place the notice directly into the hands of the United States Postal Service (or a private express carrier); and they can follow its progress by calling the court . . . knowing that if the mail goes awry they can personally deliver the notice at the last moment or that their monitoring will provide them with evidence to demonstrate either excusable neglect or that the notice was not stamped on the date the court received it. Pro se prisoners cannot take any of these precautions; nor, by definition, do they have lawyers who can take these precautions for them. Worse, the pro se prisoner has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may have every

incentive to delay. . . . Unskilled in law, unaided by counsel, and unable to leave the prison, his control over the processing of his notice necessarily ceases as soon as he hands it over to the only public official to whom he has access—the prison authorities—and the only information he will likely have is the date he delivered the notice to those prison authorities and the date ultimately stamped on the notice.

*Id.* at 271–72. The court went on to note that:

As detailed above, the moment at which pro se prisoners necessarily lose control over and contact with their notice of appeal is at delivery to prison authorities, not receipt by the clerk. Thus, whereas the general rule [that filing cannot mean anything other than filing with the clerk] has been justified on the ground that a civil litigant who chooses to mail a notice of appeal assumes the risk of untimely delivery and filing . . ., a pro se prisoner has no choice but to hand his notice over the prison authorities for forwarding to the court clerk.

*Id.* at 275.

¶ 6.   Finally, responding to "administrative concerns" that such a rule would "increase disputes and uncertainty over when a filing occurred and . . . would put all the evidence about the date of filing in the hands of [the prisoner]," the court stated that such concerns would actually be alleviated by the rule:

The pro se prisoner does not anonymously drop his notice of appeal in a public mailbox—he hands it over to prison authorities who have well-developed procedures for recording the date and time at which they receive papers for mailing and who can readily dispute a prisoner's assertions that he delivered the paper on a different date. Because reference to

332

prison mail logs will generally be a straightforward inquiry, [the rule] is a bright-line rule, not an uncertain one.[4]

*Id.* at 275.

¶ 7. The State says we should ignore *Houston* because (a) it announces no constitutional doctrine, but is only an interpretation of a federal rule, (b) it is not controlling authority in Wisconsin, and (c) courts in at least three other states have declined to follow *Houston*'s rationale.

¶ 8. The State is correct in its characterization of *Houston* as a non-constitutional federal case which would not be binding on Wisconsin courts. *See State v. Webster*, 114 Wis. 2d 418, 426 n. 4, 338 N.W.2d 474 (1983). Still, we have on many occasions followed the reasoning of federal trial and appellate-court opinions which we have found to be "persuasive" on a particular point of law. *See, e.g., State v. Boettcher*, 144 Wis. 2d 86, 96–97, 423 N.W.2d 533 (1988); *Streff v. Town of Delafield*, 190 Wis. 2d 348, 356–57, 526 N.W.2d 822 (Ct. App. 1994).

¶ 9. We note at the outset that there is a difference in the "filing" requirements of the federal rule at issue in *Houston*, and the Wisconsin rules applicable to the filing of certiorari actions by prison inmates. The time-keyed provisions of the federal rule relate to the simple act of filing a notice of appeal; nothing more is required for institution of the appeal proceedings. In

---

[4] The Court also noted that relying on the date of receipt by the clerk, in contrast, would raise much more difficult questions—such as whether delays by the Postal Service constitute excusable neglect, or whether the stamped date is correct—and, most difficult of all, what to do when it appears that the prison authorities were dilatory in forwarding the parcel. *See id.* at 275–76.

Wisconsin, however, civil actions are not commenced until the applicable filing fee is paid, *see* WIS. STAT. § 801.02(6), unless payment is waived by the court for cause shown.[5] If an inmate wishes to commence a certiorari action without full prepayment of the fee, he or she must request leave to do so and submit to the court an affidavit of indigency and a certified copy of his or her trust fund account statement for the preceding six-month period. *See* WIS. STAT. § 814.29(1m)(b)(1) and (2). The court then considers these submissions in determining whether to "allow[ ] the prisoner to commence . . . the action"—either without payment of the fee, or by paying into court the balance in the account, if it is less than the fee amount. Section 814.29(1m)(c). There is, in short, much more to the "filing" process in this situation than existed in *Houston*; and it is for this reason that we do not adopt its express holding that deposit of the pleading or notice in the prison mail receptacle constitutes "filing" within the meaning of time-limit statute. Instead, applying the *Houston* court's rationale—which we believe is equally applicable here—we effectively toll the statutory forty-five-day time limit from the time the appropriate documents are deposited in the prison mail receptacle and their receipt by the clerk of court. Thus, under our holding, even though a prisoner's certiorari action may be timely with respect to the § 893.735(2) time limit, the court may still decline to allow the action to proceed

---

[5] Prison inmates are also required to file certain other documents along with the pleading in order to establish that any applicable administrative remedies have been exhausted. *See* § 801.02(7)(c) and (d).

if the fee and other requirements of §§ 801.02 and 814.29 are not met.[6]

¶ 10. The State says that we should not follow *Houston,* citing cases from Oregon, Ohio and Missouri which have declined to do so. We see nothing in any of those cases, however, that would make us decline—or even hesitate—to reach an opposite result here. In *Norby v. Santiam Correctional Institution,* 841 P.2d 1 (Ore. App. 1992), the Oregon court simply stated, without discussion or analysis, that it would not follow *Houston* because it was a federal, not a state, case. *See id.* at 1.[7] Similarly, in *State v. Smith,* 702 N.E. 2d 1245 (Ohio App. 1997), the Ohio court offered no explanation for its refusal to follow *Houston* other than a single sentence noting that *Houston* involved a federal statute and the court didn't consider it to be "persuasive." *Smith* at 1246. Finally, in *O'Rourke v. State,* 782 S.W.2d 808 (Mo. App. 1990), the Missouri court said

[6] In this case, as we have noted above, Shimkus was not seeking leave of the court to file an action without prepayment of fees under WIS. STAT. § 814.29. We addressed that issue in our recent decision in *State ex rel. Steldt v. McCaughtry,* 2000 WI App 176, No. 99–2000. In *Steldt,* we held that prisoners seeking to petition for certiorari review without payment of filing fees due to indigency should not be time-barred by delays in obtaining a fee waiver or making appropriate payments over which the prisoners have no control. *See id.* at ¶ 1. We need not consider that issue here because Shimkus's filing fee was apparently included in the papers sent to the court by the prison authorities.

[7] A second Oregon case cited by the State, *Stull v. Hoke,* 948 P.2d 722 (Ore. 1997), rejected a *Houston*-based argument without any discussion whatsoever. We note also that the *Stull* court emphasized that, under Oregon law, a civil action is commenced only when the complaint is "filed *and served*" within the specified time. *Id.* at 723, 724 (emphasis added).

that it would not follow *Houston* because it was a federal case and "did not establish a constitutional requirement that a there must be a prison mailbox rule" which would deviate from the language of the applicable Missouri statute (requiring postconviction motions to be filed with the clerk of the trial court). *Id.* at 809.[8]

¶ 11.    Courts in several other states have elected to follow *Houston*—acknowledging, as we do today, that it does not announce a rule of federal constitutional law, but concluding that its rationale is persuasive because state inmates face obstacles identical to those that led the *Houston* court to adopt the "prison mailbox" rule. Today, we join those courts.

¶ 12.    In *Commonwealth v. Jones*, 700 A.2d 423 (Pa. 1997), the court, after quoting at length from *Houston*, recognized that "pro se prisoners in this Commonwealth have the same obstacles as pro se prisoners in federal prisons," and went on to interpret the Pennsylvania statute requiring notices of appeal to be "fil[ed] with the clerk of the lower court" within thirty days as "amenable to an exception for pro se prisoners." *Id.* at 426. Similarly, in *Tatum v. Lynn*, 637 So. 2d 796 (La. App. 1994), the court found the *Houston* rationale to be "persuasive" and held that placing a petition for judicial review of a prison disciplinary proceeding in the prisoner's mailbox complied with requirement of Louisiana law that such petitions be "fil[ed] . . . in the district court." *Id.* at 799. And, in *Haag v. State*, 591 So. 2d 614 (Fla. 1992), and *Woody v. State*, 833 P.2d 257

[8] The Missouri court also noted that the "institutional safeguards" of logging in prisoner mail, etc., referred to in *Houston* didn't exist in *O'Rourke* because O'Rourke had simply dropped the envelope off at the prison mail room and didn't check on it again for six months. *Id.* at 809.

(Ok. 1992), the Florida and Oklahoma courts not only found *Houston*'s reasoning persuasive, but concluded that state constitutional provisions guaranteeing the right to habeas corpus[9] and providing a "legal remedy for every wrong,"[10] mandated adoption of *Houston*'s "mailbox" rule. *See Haag*, 591 So. 2d at 617; *Woody*, 833 P.2d at 259.

¶ 13. We, too, are persuaded by *Houston*'s reasoning. Like many of the state and federal courts considering the question, we see no real difference between a prisoner in the federal system and a Wisconsin prisoner.[11] In each instance, unlike non-confined and/or represented litigants, they are not able to file documents directly—or even to telephone to ascertain whether their papers have been properly filed. Nor do they have any control over the documents once they are delivered to prison officials—with the result that, as happened here, papers delivered in ample time for proper and timely submission to the place the law requires them to be filed, simply do not arrive in a timely fashion. Pro se prisoners necessarily lose all control over (and all contact with) their documents the moment they deliver them to the prison authorities. That may also be true for the non-incarcerated litigant who elects to deposit his or her documents in the mail, rather than see to their personal delivery to the filing official. But the pro se prisoner has no choice in the matter. He or she cannot travel to the filing office—or

[9] Florida Const., Art. I, § 13.

[10] Oklahoma Const. Art. II, § 6.

[11] Nor did the Court of Appeals for the Seventh Circuit when, in *Jones v. Bertrand*, 171 F.3d 499 (7th Cir. 1999), it applied the *Houston* "mailbox" rule to a petition for habeas corpus filed by a Wisconsin prisoner incarcerated at the Green Bay Correctional Institute.

even to the post office to have delivery certified. Reliance must instead be placed wholly on the good faith of prison officials and employees to see to the timely forwarding of the documents to the designated office. If this trust is violated, whether willfully or through neglect or simple inadvertence, the prisoner loses by default.[12] The *Houston* rationale avoids such a result and seems to us to be entirely consistent with the basic principles of fairness and equal treatment on which both our substantive and procedural laws are based.

[12] The State takes the position that, despite all this, Shimkus is confronted with a situation of his own making; and for that reason alone should be denied relief. The State says that, irrespective of his incarceration or his pro se status, Shimkus had plenty of time—thirty days—to prepare and file his petition—and that even if it took nine days for prison authorities to process the mailing, they had no obligation to "rush" that processing and Shimkus simply should have gotten the petition to them sooner.

There is no question that a nonprisoner who waits until the last day of a limitation period to personally file a petition, notice or other legal document, is entitled to have his or her appeal heard on the merits. We certainly do not condone such eleventh-hour practice, but we see no rational basis for letting a nonincarcerated person who personally files the petition at 4:29 p.m. on the last day of the limitation period to have his or her day in court, while denying it to someone like Shimkus, who, because he has no ability to do otherwise, places his petition in the hands of prison authorities for forwarding to the court well ahead of the filing deadline. As the California Supreme Court recognized in *In re Jordan*, 840 P.2d 983, 992 (Cal. 1992), the *Houston* rationale "simply ensures that a prisoner who exercises the same degree of diligence, by personally delivering to prison authorities a notice of appeal on the [last] day is accorded similar treatment."

¶ 14.   We conclude, therefore, that when a prison inmate places a certiorari petition in the institution's mailbox for forwarding to the circuit court, the forty-five-day time limit in WIS. STAT. § 897.735(2) is tolled. As indicated, however, other defects in the filing, such as the failure to pay the required fee, or establish a right to waiver of the fee, may nonetheless result in its rejection by the court. In this case, however, because it appears that no fee waiver was sought, and because the State does not claim that there were other defects in Shimkus's filing, we conclude that the circuit court erred in quashing the writ based on the untimeliness of the petition.

*By the Court.*—Order reversed and cause remanded with directions.