STATE of Wisconsin EX REL. Norman O. BROWN,
Petitioner,

v.

Jody BRADLEY, Warden, North Fork Correctional
Facility, and Jon Litscher, Secretary, Department
of Corrections, Respondents.

Supreme Court

*No. 01–3324–W. Oral argument October 8, 2002.—Decided
March 6, 2003.*

2003 WI 14

(Also reported in 658 N.W.2d 427.)

For the petitioner there was a brief by *Greg J. Carman,* Shorewood, and oral argument by *Greg J. Carman.*

For the respondents the cause was argued by *James M. Freimuth,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

¶ 1. ANN WALSH BRADLEY, J. The Petitioner, Norman O. Brown, seeks reinstatement of his petition for review which was previously dismissed as untimely filed.[1] Brown contends that this court should apply retroactively the tolling rule for pro se prisoners that it adopted in *State ex rel. Nichols v. Litscher,* 2001 WI 119, 247 Wis. 2d 1013, 635 N.W.2d 292, and deem his petition for review "timely."

¶ 2. We now conclude that the tolling rule we adopted in *Nichols* is a civil procedural rule with limited

---

[1] The petitioner had filed the petition seeking review of an unpublished decision of the court of appeals. *State v. Brown,* Nos. 99–2567–CR and 99–2568–CR, unpublished slip op. (Wis. Ct. App. July 6, 2000) (affirming orders denying his postconviction motions for plea withdrawal issued by the Circuit Court for Dane County, Maryann Sumi, Judge).

retroactive application. It applies retroactively to cases on direct review or not yet final when *Nichols* was decided and to pro se prisoners who had raised the issue in habeas petitions that were still pending before this court. Because this court denied Brown's petition for review prior to deciding *Nichols,* he is not entitled to relief under this application of the tolling rule. However, we determine that denying relief to Brown would be unjust because this court denied Brown's petition for habeas corpus while nearly simultaneously granting Nichols' petition raising virtually the same claim. Accordingly, we reinstate Brown's petition for review pursuant to *Harmann v. Hadley,* 128 Wis. 2d 371, 382 N.W.2d 673 (1986).

## I

¶ 3. Brown's petition for review stemmed from the circuit court's denial of his motion to withdraw his no contest plea.[2] The court of appeals affirmed in part and reversed in part, and remanded the case to the circuit court to determine whether the prosecution had breached the plea agreement it reached with Brown. The circuit court determined that no breach occurred, and the court of appeals affirmed that determination on July 6, 2000. *State v. Brown,* Nos. 99–2567–CR and 99–2568–CR, unpublished slip op. (Wis. Ct. App. July 6, 2000).

¶ 4. Brown, who was incarcerated in the North Fork Correctional Facility in Sayre, Oklahoma, submitted to this court a pro se petition for review. Under Wis.

---

[2] Brown pled no contest to six counts of forgery-uttering, party to the crime, as a repeat offender. He was subsequently convicted and sentenced to three consecutive five-year prison terms, and to 16 years of probation, to run after his release from prison.

Stat. § 808.10 and Wis. Stat. (Rule) § 809.62(1), he had 30 days to file his petition. This court did not receive Brown's petition for review until August 9, 2000, two days after the statutory deadline. It therefore dismissed the petition as untimely.

¶ 5. Brown subsequently wrote the court, outlining the steps he had taken to prepare and file his petition for review, and asking that the court accept his petition as timely filed. This court treated Brown's correspondence as a motion for reconsideration and denied it. Brown then filed a petition for a writ of habeas corpus, which the court denied. Finally, on December 12, 2001, after this court had decided *Nichols* and adopted a tolling rule for pro se prisoners' petitions for review, Brown filed another habeas petition, claiming that the tolling rule should apply to his petition for review.

## II

¶ 6. This court ordered briefing on only one issue: "whether the tolling rule adopted in [*Nichols*] should receive prospective or retroactive application." To resolve this issue, we first examine *Nichols* to set the stage for our discussion.

¶ 7. Much as in this case, *Nichols* involved a pro se prisoner's attempt to file a petition for this court's review.[3] *Nichols,* 247 Wis. 2d 1013, ¶ 3. The filing deadline for Nichols' petition was February 25, 2000, 30 days after the court of appeals affirmed his conviction. Nichols gave his completed petition to the prison librarian for copying on February 15, 2000. He received the

[3] Like Brown, Nichols was incarcerated in the North Fork Correctional Facility. *State ex rel. Nichols v. Litscher,* 2001 WI 119, ¶ 2, 247 Wis. 2d 1013, 635 N.W.2d 292.

copies on a Friday afternoon, February 18, 2000, too late for outgoing mail on that day. The prison mailroom was closed on the weekend. *Id.* at ¶¶ 2–4.

¶ 8. Nichols delivered the petition to the mailroom on Monday, February 21. The clerk of court received the petition on Monday, February 28, three days after the deadline. This court dismissed the petition for review as untimely, and then denied Nichols' subsequent petition for a writ of habeas corpus. *Id.* at ¶¶ 4–6.

¶ 9. On reconsideration, Nichols urged the court to adopt a "prison mailbox rule" whereby a pro se prisoner's petition would be considered filed when delivered to the proper prison authorities for mailing. *Id.* at ¶ 6. Such a rule had been established by the Supreme Court in *Houston v. Lack,* 487 U.S. 266 (1988). We declined to implement the prison mailbox rule, but instead adopted a similar "tolling" rule that had been employed by the court of appeals in *State ex rel. Shimkus v. Sondalle,* 2000 WI App 238, 239 Wis. 2d 327, 620 N.W.2d 409. *Nichols,* 247 Wis. 2d 1013, ¶ 24.

¶ 10. We concluded that "the 30–day deadline for receipt of a petition for review is tolled on the date that a pro se prisoner delivers a correctly addressed petition to the proper prison authorities for mailing." *Id.* at ¶ 32. We further determined that the tolling rule applied to Nichols. *Id.* However, we specifically declined to determine whether the rule would generally apply retroactively or prospectively, noting that "because [Wis. Stat.] § 808.10 applies to all petitions for review, both civil and criminal, it is unclear if the retroactivity analysis used in civil cases should govern." *Id.* at ¶ 30. We stated that a determination of retroactive or prospective application "should be made with the benefit of

635

briefs and argument on the merits by parties who take adverse positions." *Id.* at ¶ 31.

¶ 11. In the present case, the parties' disagreement is largely over the degree to which the tolling rule should apply retroactively, and over whether the rule is a civil or a criminal rule. Brown argues that the civil procedural rules apply, in part because one of the statutes governing the filing of petitions for review, Wis. Stat. § 808.10,[4] is located within the chapters of the statutes which govern civil procedure. He further asserts that under either civil or criminal analysis, he is entitled to relief.

¶ 12. The State initially advances that the tolling rule is a criminal procedural rule. It then briefly asserts that if the rule is civil in nature, it should be applied prospectively. Ultimately, it argues that regardless of whether it is civil or criminal, prospective or retroactive, it should apply only to cases pending on direct review or not yet final when *Nichols* was decided and to pro se prisoners who filed habeas petitions seeking a prison mailbox rule before *Nichols* was decided but whose petitions were not yet acted upon by this court.

¶ 13. In general, rules for criminal procedure apply retroactively only to those cases pending on direct review or not yet final. *Griffith v. Kentucky,* 479 U.S. 314, 328 (1987); *State v. Koch,* 175 Wis. 2d 684, 694, 499

---

[4] Wisconsin Stat. § 808.10 provides:

> A decision of the court of appeals is reviewable by the supreme court only upon a petition for review granted by the supreme court. The petition for review shall be filed in the supreme court within 30 days of the date of the decision of the court of appeals.

N.W.2d 152 (1993). The standards for civil procedural rules differ in that retroactive application is presumed. *Browne v. WERC*, 169 Wis. 2d 79, 112, 485 N.W.2d 376 (1992). In *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971), the Supreme Court established factors to consider in determining whether the presumption is overcome such that the new civil rule would apply prospectively. This court adopted the *Chevron* standards in *Kurtz v. City of Waukesha*, 91 Wis. 2d 103, 109, 280 N.W.2d 757 (1979).[5]

¶ 14. We determine that civil standards apply. Nothing in the language of the statutes setting a time limit for the filing of petitions for review, Wis. Stat. §§ 808.10 or 809.62, indicates that the statutes are criminal in nature. Sections 808.10 and 809.62 apply to petitions regarding both civil and criminal matters. While the tolling rule in question applies only to petitions filed by pro se prisoners, those prisoners may file petitions relating to matters other than their convictions—matters that are civil in nature. We conclude, much as the court did in *M.W. v. Monroe County*

---

[5] The Supreme Court has abandoned the standards it announced in *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971), and now applies the standard it announced in *Griffith v. Kentucky*, 479 U.S 314 (1987) (new rules are retroactive to cases pending on direct review or not final) to new civil rules as well as new criminal rules. *See Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97 (1993); *State v. Thiel*, 2001 WI App 52, ¶ 10 n.6, 241 Wis. 2d 439, 625 N.W.2d 321. The court of appeals in *Thiel* declined to follow *Harper*, noting that *Harper* applies only to the interpretation of federal law, and that amending Wisconsin's standards is the role of the Wisconsin Supreme Court. *Thiel*, 241 Wis. 2d 439, ¶ 10 n.6. In this case, although briefly noted, neither party argued or briefed the issue of whether the *Harper* standard should apply. Thus, we do not address the issue.

*DHS,* 116 Wis. 2d 432, 442, 342 N.W.2d 410 (1984), that because the statutes at issue are essentially civil in nature, we will apply the civil standards set forth in *Chevron* and *Kurtz.*

■

¶ 15. We next consider whether the application of the new rule should be retroactive or prospective. To aid in this determination, *Chevron/Kurtz* sets forth three factors for our consideration:

> (1) Does the rule "establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed"?
>
> (2) Will retroactive operation further or retard the operation of the rule in question?
>
> (3) Will retroactive application produce substantial inequitable results?

*Chevron,* 404 U.S. at 106.

■

¶ 16. Wisconsin generally adheres to the doctrine that retroactive application of judicial decisions is the rule, not the exception. *State v. Thiel,* 2001 WI App 52, ¶ 7, 241 Wis. 2d 439, 625 N.W.2d 321. Yet, sometimes retroactive application of a new rule is unsettling because of a justifiable reliance on a contrary view of the law.

¶ 17. The *Chevron/Kurtz* factors require us to consider if reliance on a contrary rule of law was so justified and so detrimental as to require deviation from the traditional retroactive application. A prospective application of a new rule is used to mitigate hardships that may occur by retroactive application. *Harmann,* 128 Wis. 2d at 378–379.

¶ 18. The first *Chevron/Kurtz* factor inquires whether the new rule overruled clear past precedent or decided an issue of first impression whose resolution was not clearly foreshadowed. *Nichols* did not overrule any clear past precedent. Brown contends, however, that because this court "relied heavily" on *Houston,* 487 U.S. 266, its adoption of the tolling rule in *Nichols* was clearly foreshadowed. We disagree.

¶ 19. Until the *Nichols* decision, the 30–day period for filing petitions for review operated for 23 years without a tolling rule for pro se prisoners. Thirteen years elapsed between the adoption of the "prison mailbox rule" announced in *Houston* and our decision in *Nichols.* After discussing the proposed "prison mailbox rule," we declined to adopt it and reaffirmed that depositing a petition in a prison mailbox does not constitute a filing of the petition. *Nichols,* 247 Wis. 2d 1013, ¶¶ 11, 20, 24.

¶ 20. Instead, we embraced the tolling rule that the court of appeals had adopted in *Shimkus,* 239 Wis. 2d 327. Admittedly, determining whether *Shimkus* foreshadowed our decision in *Nichols* presents us with a close call. We note, however, that *Shimkus* involved a different statute and different procedures. *Id.* at ¶¶ 24–25. We conclude that while the *Shimkus* decision certainly guided our decision in *Nichols,* neither *Houston* nor *Shimkus* clearly foreshadowed the adoption of a tolling rule for pro se prisoners filing a petition for review.

¶ 21. The *Chevron/Kurtz* second factor draws us to consider if retroactivity would further or retard the operation of the *Nichols* tolling rule. Brown argues that retroactivity would further the operation of the rule and would ensure that similarly situated prisoners would be treated alike. Conversely, the State argues for

limited retroactivity and contends that a full retroactive application of the rule is more apt to retard than promote its purpose of aiding pro se prisoners who timely give their petitions to proper prison authorities for mailing. The State asserts that it would be difficult or impossible in many cases to determine whether petitions dismissed as untimely were actually timely delivered to prison officials for mailing.

¶ 22. We agree with the State that full retroactivity could create a myriad of problems which frustrate the operation of the rule. We acknowledged in *Nichols* that both Nichols and the State agreed that the use of a certificate of mailing would resolve factual questions regarding whether a prisoner had timely and appropriately delivered a petition for mailing. *Nichols,* 247 Wis. 2d 1013, ¶ 27. We concluded that use of such a certificate "would create a rebuttable presumption that the prisoner had delivered his or her petition to the proper prison authorities on the particular day certified." *Id.*

¶ 23. In *Nichols* we also noted the State's averment that "many prisons do not have a general 'log-in' system that identifies the date on which a prisoner submits outgoing mail." *Id. Nichols* put both prison officials and prisoners on notice of the importance of keeping such records.

¶ 24. Full retroactivity of the tolling rule would include petitions filed before *Nichols,* and before we discussed including an affidavit or certificate of mailing. Petitioners who had not taken the step of including an affidavit or certificate of mailing would often have no evidence other than their testimony regarding whether they timely delivered for mailing a petition for review. The State would often have no evidence regarding timeliness other than the fact of the untimely filing. Under these circumstances, a court would have no

adequate method of determining whether the tolling rule should apply in a given case. Thus, we agree with the State that limited retroactivity here promotes the purpose of the rule but that full retroactivity is more apt to frustrate the operation of the rule.

¶ 25.　The third *Chevron/Kurtz* factor requires us to consider the equities of retroactivity. We note again the difficulties with full retroactivity in determining whether a petition dismissed as untimely would have been timely under the tolling rule. Although the burden of persuasion regarding proof of mailing is on the prisoner, the State may be disadvantaged due to the passage of time in countering prisoners' claims of timely delivery of petitions for review. We also consider the interests that the State, crime victims, and others have in the finality of cases. Full retroactive application could produce inequitable results because it opens up cases that have long been thought by everyone, including crime victims, to have been final.

¶ 26.　Having considered the three *Chevron/Kurtz* factors, we conclude that neither a prospective nor a fully retroactive application of the tolling rule we adopted in *Nichols* is warranted. A limited retroactive application best promotes the operation of the rule and produces the most equitable results. Such an approach permits some pro se prisoners to benefit from the new rule without the accompanying difficult proof problems which frustrate the operation of the rule. Additionally, a limited retroactive application recognizes the value of finality of cases and the inequities that result from reopening cases thought to be long since closed.

¶ 27.　Limited retroactive application also is consistent with our holding in *Schmelzer* and the court of appeals holding in *Thiel. State ex rel. Schmelzer v. Murphy,* 201 Wis. 2d 246, 258–59, 548 N.W.2d 45 (1996);

*Thiel,* 241 Wis. 2d 439, ¶¶ 18–19. In both cases, the court determined that a new rule should apply to matters on direct appeal that are not final before the date we adopted the new rule.[6] *Schmelzer* also extended its application to petitioners who had raised the issue in habeas petitions that were still pending before this court.

¶ 28. Brown's petition for review was final and he had no pending habeas petition at the time we adopted the tolling rule in *Nichols.* His petition for habeas corpus was denied on October 6, 2000, and his opportunity to petition the United States Supreme Court for certiorari had expired. We issued the *Nichols* decision on November 6, 2001, approximately a year later. In fact, we had not even granted Nichols' petition for review at the time we denied Brown's petition. Brown's petition therefore does not fall within the limited retroactivity appropriate for the tolling rule.

### III

¶ 29. Brown asserts that a decision to apply the tolling rule in such a way as to deny him relief is unjust. He contends that he and Nichols were in virtually the same situation and took virtually the same actions in seeking review of their cases. He notes that he filed a petition for review advocating a prison mailbox rule, and that we denied his petition only shortly before

---

[6] A case is not final if "prosecution is pending, no judgment of conviction has been entered, the right to a state court appeal from a final judgment has not been exhausted, and the time for certiorari review in the United States Supreme Court has not expired." *Thiel,* 241 Wis. 2d 439, ¶ 19 n.10; *State v. Koch,* 175 Wis. 2d 684, 694 n. 3, 499 N.W.2d 152 (1993).

granting review of Nichols' petition. Brown advances that our decision to deny his petition but to grant Nichols' petition was "somewhat of an arbitrary selection . . . bordering on serendipity."

¶ 30. We agree with Brown's argument that he and Nichols are similarly situated parties—the facts and procedural histories of the two cases are strikingly similar.[7]

| *Brown* Case | | *Nichols* Case | |
|---|---|---|---|
| Motion for reconsideration of dismissal of petition for review-denied | September 5, 2000 | Petition for writ of habeas corpus requesting review of dismissal of petition for review-denied | September 12, 2000 |
| *Shimkus* decision | September 14, 2000 | *Shimkus* decision | September 14, 2000 |
| Petition for writ of habeas corpus requesting review of denial of reconsideration motion | October 3, 2000 | Motion for reconsideration of denial of habeas petition | October 3, 2000 |
| Petition for writ of habeas corpus denied | October 6, 2000 | Motion for reconsideration granted | December 12, 2000 |

¶ 31. We addressed a similar situation in *Harmann v. Hadley*, 128 Wis. 2d 371, 382 N.W.2d 673 (1986). In *Harmann*, the petitioner (Harmann) filed a negligence action against two adults who furnished

___

[7] "Similarly situated parties" are those whose cases are "factually and legally similar" and "share similar procedural histories." *Thiel*, 241 Wis. 2d 439, ¶ 16 n.9 (citing *Bell v. County of Milwaukee*, 134 Wis. 2d 25, 28, 40–41, 396 N.W.2d 328 (1986)).

alcohol to a minor who consumed the alcohol and then caused injury to Harmann. *Id.* at 372. The complaint was dismissed by the circuit court because the Wisconsin Supreme Court had held in *Olson v. Copeland,* 90 Wis. 2d 483, 280 N.W.2d 178 (1979), that the negligent furnishing of alcohol was not the cause of the injury. *Harmann,* 128 Wis. 2d at 372. This court denied Harmann's petition to bypass the court of appeals. While the appeal was pending, this court issued *Sorensen v. Jarvis,* 119 Wis. 2d 627, 644–45, 350 N.W.2d 108 (1984), overruling *Olson.*

¶ 32. Meanwhile, this court held in *Koback v. Crook,* 123 Wis. 2d 259, 276, 366 N.W.2d 857 (1985), that a social host was liable for injury caused by a minor to whom the host had negligently furnished alcohol. The *Koback* decision, issued on April 30, 1985, was applied prospectively. The court employed the device of "sunbursting,"[8] determining that the holding would apply prospectively where "the conduct which causes injury occurs on or after September 1, 1985," and also to the parties in the case. *Id.* at 277; *see Harmann,* 128 Wis. 2d at 373–74, 378. Harmann's action was not covered by the prospective application of the *Koback* holding, and the court of appeals affirmed the dismissal of the case on May 29, 1985. *Harmann,* 128 Wis. 2d at 372–74.

¶ 33. This court then determined that a failure to apply the *Koback* rule to Harmann would be unjust. The court stated that "[t]he chance, but determinative, circumstance here is the timing of the Harmanns' petition to bypass." *Id.* at 383. The court noted that

---

[8] "Sunbursting" is "prospective overruling" used to limit the effect of a new rule. *Harmann v. Hadley,* 128 Wis. 2d 371, 382 N.W.2d 673 (1986).

while Harmann's case was pending in the court of appeals, it granted the petition to bypass in *Koback*. It stated:

> The Kobacks and the Harmanns were pursuing the same claims in the circuit court, the court of appeals, and this court during the same time period. Because of the procedural histories of the *Sorensen, Koback* and *Harmann* cases and our remanding *Harmann* to the court of appeals rather than holding it pending the outcome of *Sorensen,* the plaintiffs in *Koback* and *Sorensen* received the benefit of our new rules, while the *Harmann* plaintiffs did not.
>
> A basic tenet in our judicial system is that individuals similarly situated should be treated similarly. When we examine the procedural histories of the *Sorensen, Koback* and *Harmann* cases, we find it is hard to justify denying the Harmanns the benefit of the *Koback* rule when months before *Koback* they presented the same issue to this court. Had we withheld our decision on the *Harmann* petition to bypass perhaps the Kobacks, rather than the Harmanns, would now be seeking relief from the rule of prospectivity.

*Id.* at 384–85.

¶ 34. The court concluded based on the similar procedural histories of the cases that it could not "in all fairness deny the Harmanns their day in court." *Id.* at 386. It noted that "[b]ut for our decision to deny the *Harmann* petition to bypass, the *Harmann* case would have established the rule of liability and subjected the defendants in this case to liability." *Id.*

¶ 35. We think that the reasoning of *Harmann* is applicable to this case. As we noted above, the procedural histories of *Nichols* and *Brown* are extremely similar. Brown's motion for reconsideration was denied September 5, 2000. Nichols' habeas petition was denied

September 12, 2000. Brown filed a habeas petition on October 3, 2000. Nichols moved for reconsideration on the very same day, October 3, 2000. Yet, we denied Brown's habeas petition and we granted Nichols' motion for reconsideration.[9]

¶ 36. We conclude that because Brown and Nichols are similarly situated parties, it would be unjust under these circumstances to grant relief to Nichols while denying relief to Brown. We therefore grant Brown's petition for writ of habeas corpus and reinstate his petition for review.

### IV

¶ 37. In sum, we hold that the tolling rule for the filing of petitions for review by pro se prisoners set forth in *Nichols*, 247 Wis. 2d 1013, applies retroactively to cases on direct appeal that were not finalized before the date we adopted the tolling rule and to pro se prisoners who had raised the issue in habeas petitions that were still pending before this court. We further conclude that because Brown is "similarly situated" to Nichols, and because it would be unjust to deny him relief under the procedural history of this case, we grant Brown the relief he has requested.

*By the Court.*—The petition for writ of habeas corpus is granted; rights declared.

---

[9] *Harmann* provided a specific remedy in a very narrow circumstance. It dealt with cases similarly situated: two cases on direct appeal (*Kobeck* and *Harmann*) just moments apart. The same is true here: two cases on collateral habeas review (*Nichols* and *Brown*) just moments apart. The dissent errs by comparing the two subsequent cases benefiting from the exception to the exception without also comparing the two original cases creating the exception to the exception. The analogy is thus not properly made and should be rejected; *Harmann* is not being extended here.

¶ 38. DIANE S. SYKES, J. *(dissenting)*. I would deny this habeas petition. This case does not present a retroactivity question in the usual sense, that is, whether a newly declared rule of law applies retroactively to cases still open on direct review or to events or conduct that predate the announcement of the rule. *Harper v. Virginia Dep't of Taxation,* 509 U.S. 86, 97 (1993). Rather, this case presents the more difficult question of whether a newly declared rule can be applied retroactively in a collateral attack on a judgment already final. *Teague v. Lane,* 489 U.S. 288, 299 (1989); *State ex rel. Schmelzer v. Murphy,* 201 Wis. 2d 246, 258–59, 548 N.W.2d 45 (1996).

¶ 39. In *Harper,* the United States Supreme Court standardized its general approach to retroactivity analysis. It abandoned the multi-factor test of *Chevron Oil Co. v. Huson,* 404 U.S. 97 (1971), for civil cases, just as it had earlier, in *Griffith v. Kentucky,* 479 U.S. 314 (1987), abandoned the multi-factor test of *Linkletter v. Walker,* 381 U.S. 618 (1965), in criminal cases. *Harper,* 509 U.S. at 90. The Court held that:

> [w]hen this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule.

*Id.* at 97. The federal rules for civil and criminal retroactivity are thus now the same.

¶ 40. Because our retroactivity jurisprudence is based on that of the United States Supreme Court, we will at some point be asked to adopt , overrule *Kurtz v. City of Waukesha,* 91 Wis. 2d 103, 280 N.W.2d 757 (1979) (in which we adopted the *Chevron Oil* retroactivity test for civil cases), and bring our law into

conformity with the now-uniform federal rule.[1] However, we have not been asked to do so in this case.

¶ 41. As the majority notes, although the the State mentioned *Harper* in its brief, it declined to take a position on whether we ought to enunciate a uniform standard of retroactivity for civil and criminal cases; Brown did not even cite *Harper*. Majority op., ¶ 13 n.5. While it is clear that *Chevron Oil* is no longer good law and *Kurtz* should therefore be revisited, I agree that the question is better left for another case because the issue was not fully developed here. Without addressing *Harper*, the court continues to apply *Chevron Oil,* as it has since *Kurtz. See* majority op., ¶¶ 13–26 ("*Chevron/Kurtz*"). *Cf. Harper,* 509 U.S. at 99–100 ("[T]he Supreme Court of Virginia has simply incorporated into state law the three-pronged analysis of *Chevron Oil* and the criminal retroactivity cases overruled by *Griffith*. We reject the department's defense of the decision below.").

¶ 42. In any event, as I have noted, the retroactivity question in this case is narrower, and concerns whether a new rule can be applied retroactively in a collateral attack on a judgment already final. In *Teague,* a plurality of the Supreme Court answered this question "no" (with certain limited exceptions), a position that has since been endorsed by a majority of the Supreme Court. *See Schmelzer,* 201 Wis. 2d at 257 n.7, (citing *Graham v. Collins,* 506 U.S. 461, 466–67 (1993)). The *Teague* plurality was persuaded by Justice Harlan's view, articulated in *Mackey v. United States,* 401 U.S. 667, 675 (1971) (Harlan, J., concurring in part and

---

[1] In *State v. Koch,* 175 Wis. 2d 684, 694, 499 N.W.2d 152 (1993), this court followed *Griffith v. Kentucky,* 479 U.S. 314 (1987), and abandoned the multi-factor retroactivity test in criminal cases.

dissenting in part), that new rules should be applied retroactively to cases on direct review and not yet final, but not to cases on collateral habeas review. *Teague*, 489 U.S. at 310. This distinction in retroactivity analysis is based on the nature of the judicial process on the one hand (once law is declared by an appellate court it should be applied to cases not yet adjudicated) and the nature of the habeas corpus remedy on the other (it attacks judgments that have already been reviewed and are long-since final, where the interest in repose is strong). *Id.* at 306.

¶ 43. The exceptions to the rule of nonretroactivity for cases on collateral review are: "First, a new rule should be applied retroactively [on collateral review] if it places 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.' " *Id.* at 307 (quoting *Mackey*, 401 U.S. at 692 (Harlan, J., concurring in part and dissenting in part)). "Second, a new rule should be applied retroactively [on collateral review] if it requires the observance of 'those procedures that . . . are "implicit in the concept of ordered liberty." ' " *Id.* (quoting *Mackey*, 401 U.S. at 693 (quoting *Palko v. Connecticut*, 302 U.S. 319, 325 (1937) (Cardozo, J.)).

¶ 44. In *Schmelzer*, this court generally adopted the *Teague* rule of nonretroactivity for cases that have already become final, with a limited modification for claims that, by their nature, can "only be made through a form of collateral relief." *Schmelzer*, 201 Wis. 2d at 258. In *Schmelzer*, it was a claim of ineffective assistance of appellate counsel, which can only be pursued by writ of habeas corpus under *State v. Knight*, 168 Wis. 2d 509, 484 N.W.2d 540 (1992). *Id.* The court announced a new right to effective assistance of appellate counsel in the preparation of a petition for review and applied it

to the petitioner Schmelzer. Then, applying *Griffith* and *Teague*, the court held that the new rule was applicable to cases in the direct appellate "pipeline" but to cases already final. *Schmelzer*, 201 Wis. 2d at 258–59. More specifically:

> [W]e conclude that we may apply the new rule announced in this case to the defendant, Schmelzer, although, consistent with *Teague*, we do not apply it retroactively to cases finalized before the issuance of this opinion. This result is somewhat inequitable, in that we have afforded relief to one defendant while not allowing relief to others similarly situated—the result disfavored in *Griffith*. Nonetheless, we conclude it would be more inequitable, under the special situation posed here, to adopt *Teague*'s holding entirely and not only deny the benefit of the new rule to this defendant but also to foreclose the possibility of *any* new rule being created in this type of case.

*Id.* at 258. The court also indicated in a footnote that persons whose *Knight* habeas petitions were filed but not yet decided by the court were "nonfinal" for purposes of retroactivity. *Id.* at 259 n.9.

¶ 45. As the majority notes, Brown's case was final a year before this court decided *State ex rel. Nichols v. Litscher,* 2001 WI 119, 247 Wis. 2d 1013, 635 N.W.2d 292. Majority op., ¶ 28. Furthermore, the rule announced in *Nichols* does not fall within either of the *Teague* exceptions. The tolling rule is intended to compensate for the vagaries of prison mail systems and is applicable to a layer of appellate review that is permissive rather than as-of-right. It concerns neither primary, individual conduct, nor procedures that are implicit in the concept of ordered liberty.

¶ 46. Accordingly, applying *Teague* and *Schmelzer*, Brown cannot seek retroactive application

of the *Nichols* tolling rule in this collateral habeas attack. Only Nichols himself, and others coming after him, may benefit from the new tolling rule.

¶ 47. The majority reaches a substantially similar conclusion in Part II, although it does so by a different route. Applying the *Chevron/Kurtz* test, the majority concludes that "neither a prospective nor a fully retroactive application of the tolling rule we adopted in *Nichols* is warranted." Majority op., ¶ 26. The majority decides that "limited retroactive application" of *Nichols* is appropriate: retroactive application to cases pending on direct appeal and not yet final, and to "pro se prisoners who had raised the issue in habeas petitions that were still pending" at the time *Nichols* was decided. Majority op., ¶¶ 26–27.

¶ 48. This is basically the same as applying the *Harper/Griffith* retroactivity rule, and adding any pro se prisoners with habeas petitions pending at the time of *Nichols*, pursuant to the *Schmelzer* footnote. In any event, Brown does not qualify for the limited retroactivity adopted by the majority, which the majority readily acknowledges. Majority op., ¶ 28.

¶ 49. The majority then invokes *Harmann v. Hadley,* 128 Wis. 2d 371, 382 N.W.2d 673 (1986), and applies *Nichols* retroactively anyway. In *Harmann*, this court made an exception to the prospective-only adoption of social host liability that it had announced a year before. In *Koback v. Crook,* 123 Wis. 2d 259, 277, 366 N.W.2d 857 (1985), this court held that social hosts can be liable for injury caused by minors to whom they negligently furnish alcohol, and employed the technique of "sunbursting" to limit the effect of this new liability rule, applying it to the parties in *Koback* but otherwise making it prospective only from a specified

date four months after the date of decision. *See Harmann*, 128 Wis. 2d at 373–74.

¶ 50. "Sunbursting" is an exception to the general rule of retroactivity, intended to ameliorate the "inequities [that] may occur when a court departs from precedent and announces a new rule of law." *Id.* at 377–78. The *Harmann* case was pending in the court of appeals at the time *Koback* was decided (this court having denied the Harmanns' petition to bypass), but because of the "sunbursting," the *Koback* rule did not apply retroactively, as ordinarily would have been the case. This court allowed the Harmanns to take advantage of the new liability rule. *Id.* at 386.

¶ 51. In other words, *Harmann* is an exception to an exception, intended to restore retroactivity where it otherwise would have existed but for the court's "sunbursting" of the new rule. *Harmann* does not address the issue of retroactivity in the context of a collateral attack on a judgment already final; it only allowed a still-pending, non-final case to move forward under the newly created rule. It is not surprising, then, that neither Brown nor the State found the *Harmann* case relevant enough to warrant citation here.

¶ 52. I find it ironic that the majority declines to address *Harper*, which at least was cited although not expounded upon by the State, yet it grants habeas relief based on a case not cited by either party. This approach —permitting retroactivity simply because Brown is "similarly situated" to Nichols—undercuts *Schmelzer*'s adoption of the *Teague* general rule of nonretroactivity in cases on collateral habeas review. I would not extend *Harmann* to final judgments, especially not without subjecting the issue to the adversarial process, and

especially not without giving the State a fair opportunity to be heard.[2] Therefore, I respectfully dissent.

[2] Footnote 9 of the majority opinion misses the point entirely. I do not quarrel with the majority's conclusion that the petitioner in *State ex rel. Nichols v. Litscher,* 2001 WI 119, 247 Wis. 2d 1013, 635 N.W.2d 292, and the petitioner in this case may have been similarly situated at the time their respective petitions for review were denied. That does not mean that *Harmann v. Hadley,* 128 Wis. 2d 371, 382 N.W.2d 673 (1986), applies. *Harmann* and the case whose rule it applied, *Koback v. Crook,* 123 Wis. 2d 259, 366 N.W.2d 857 (1985), were direct review cases; nothing in *Harmann* authorizes the reopening of judgments already final for purposes of retroactive application of a new rule of law. Collateral review cases are governed by *State ex rel. Schmelzer v. Murphy,* 201 Wis. 2d 246, 548 N.W.2d 45 (1996), and *Teague v. Lane,* 489 U.S. 288 (1989). The majority has sua sponte extended *Harmann* to cases on collateral review.